HON. ROBERT RYAN,
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE,

---

ZOETH WAGNER AND LAWRENCE WAGNER V. STATE OF NEBRASKA.

FILED DECEMBER 4, 1894. No. 6666.

1. **Criminal Law**: ACCESSORIES. In misdemeanors there are no accessories. Those whose conduct is such that it would constitute them accessories before the fact, if the principal offense were a felony, are, if it be a misdemeanor, guilty as principals.

2. **Information**: ASSAULT. Therefore, under an information charging the defendant with procuring, aiding, and abetting another to commit an assault with intent to wound, the defendant may be convicted of assault and battery.

3. ———: FELONIES. An information which in apt words charges the commission of an offense, which the statute makes a felony,

5　　　　　　　　　(1)

is not bad because it does not charge that the act was felo-
niously committed.

4. **Criminal Law: Intent: Accessories.** Where a particular
intent is an essential element of a crime, one is not guilty as an
accessory before the fact to such crime unless he participates in
or has knowledge of such intent.

Error to the district court for York county. Tried
below before Wheeler, J.

*George B. France,* for plaintiffs in error.

*George H. Hastings, Attorney General, contra.*

Irvine, C.

The plaintiffs in error, together with Otis Koontz, were
informed against in one information, charging Otis Koontz
with stabbing one Casper Salmen with intent to wound,
and charging Lawrence Wagner and Zoeth Wagner, the
plaintiffs in error, with having before said offense procured,
incited, abetted, and aided Koontz in the perpetration
thereof. Koontz demanded a separate trial, was convicted
and sentenced. The two Wagners were tried together.
Lawrence Wagner was convicted of assault and battery.
Zoeth Wagner was found guilty as charged in the infor-
mation. They were sentenced and have filed separate peti-
tions in error to reverse the several judgments against
them.

Lawrence Wagner filed no motion for a new trial, and
the only point arising in his case, and the only one argued
by counsel, is that under an information charging him as
accessory before the fact to the statutory felony of stabbing
with intent to wound no conviction could be had of assault
and battery. It is familiar law that no conviction as ac-
cessory will lie under an indictment charging one as prin-
cipal, and *vice versa* (Wharton, Criminal Law, 208); but
it is also true that in misdemeanors there are no accessories.

This rule does not mean that one conducting himself in such a manner that if the principal offense were a felony he would be an accessory is not punishable at all, if the offense be a misdemeanor, but it means that in misdemeanors the law does not distinguish between principals and accessories, and that all who participate, whether present or absent when the crime is committed, are alike guilty as principals. (Wharton, Criminal Law, 223.) This is true whether the offense is one at common law or whether it is one created by statute. (*Stratton v. State*, 45 Ind., 468; *Lowenstein v. People*, 54 Barb. [N. Y.], 299.) It would seem, therefore, that at common law language sufficient, if the offense were a felony, to charge one as accessory before the fact, would constitute a good indictment, in the case of a misdemeanor, as principal and sustain a conviction as such. It is true that the criminal jurisprudence of this state is based on the Criminal Code, but we think that the Code is in this respect declaratory of the common law. The first section of the Criminal Code provides for the punishment of those who "aid, abet, or procure any other person to commit any felony." This section provides for the punishment of accessories before the fact in the same manner as at common law, and the terms used are substantially the terms used in defining at common law such accessories; the definition is restricted to felonies. Generally throughout the Code offenses existing at common law are described by their common law terms without further definition, and such offenses have always been construed with reference to the common law. The statute in regard to batteries does not use the term "battery," but uses the language "unlawfully strike or wound another." This is substantially the common law definition of a battery, although, perhaps, somewhat restricted as to the nature of the beating required, but not as to the persons doing it. We think it quite clear that the legislature did not intend by defining accessories in the terms of common law to pre-

vent the punishment of those who aid, abet, or procure the
commission of misdemeanors, and that such persons re-
main punishable as principals.    If this be so, then the in-
formation in charging the aiding, abetting, and procuring
of the perpetration of the felony sufficiently charged the
aiding, abetting, and procuring of minor offenses included
in the greater charge, and so by apt words charged Law-
rence Wagner with acts which in law constituted him a
principal to the misdemeanor of which he was convicted.
The judgment as to Lawrence Wagner must, therefore, be
affirmed.

Zoeth Wagner was convicted of being an accessory be-
fore the fact of stabbing with intent to wound.    He filed
a motion for a new trial and a number of errors are as-
signed.    The first is that the information is insufficient.
The information, omitting the purely formal parts, is as
follows: "That Otis Koontz, on the 25th day of April,
A. D. 1893, in said county of York, in and upon one
Casper Salmen, then and there being, unlawfully and ma-
liciously did make an assault with a certain knife which
he, the said Otis Koontz, then and there in his right hand
had and held, said Casper Salmen on his left breast and on
the head near the top of him, the said Casper Salmen, the
said Otis Koontz, then and there unlawfully, maliciously,
and feloniously, did strike, stab, cut, and wound, with the
intent then and there of him the said Otis Koontz, him the
said Casper Salmen, then and there to wound; and before
said striking, stabbing, and wounding, and felony were
committed by the said Otis Koontz, to-wit, on the 25th
day of April, A. D. 1893, Lawrence Wagner and Zoeth
Wagner, in said county of York, unlawfully, purposely,
and feloniously did procure, incite, abet, and aid him, the
said Otis Koontz, in the perpetration of the said striking,
stabbing, cutting, and wounding, and felony, in the afore-
said manner and form."    The defect which it is claimed
exists in this information is that it fails to charge that

Koontz "feloniously" made the assault, and that it cannot properly charge an offense against the accessory without sufficiently charging the principal. We do not think the information deficient in this respect. It will be observed that the information charges that Koontz unlawfully and maliciously made the assault, and unlawfully "and feloniously did strike, stab, cut, and wound" Salmen with intent to wound him. We think the latter language sufficiently charges the assault to be felonious, but aside from that we do not think that the information would be bad for the total failure to use the word "felonious," provided the offense were otherwise correctly described. The statute creating this offense is as follows: "If any person shall maliciously shoot, stab, cut, or shoot at any other person with intent to kill, wound, or maim such person, every person so offending shall be imprisoned in the penitentiary not more than twenty years nor less than one year." (Criminal Code, sec. 16.) Under this statute it has been held that the use of the word "maliciously" was not essential to charge the offense, the other words being sufficient to charge what in law amounts to malice. (*Whitman v. State*, 17 Neb., 224.) In that case, as well as in *Hopkins v. State*, 36 Neb., 160, it was held that it was not even necessary to use the precise words of the statute, provided words identical in meaning were used. This information uses the words of the statute. The Criminal Code constitutes all offenses punishable by imprisonment in the penitentiary felonies. (Criminal Code, sec. 247.) Section 16, above quoted, defines this offense and makes it punishable in the penitentiary. The offense being charged in all the terms of the statute, the words used, in their legal intendment, charged a felony, and the use of the expletive "feloniously" was unnecessary. This is especially true in view of section 412 of the Criminal Code, providing that no indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings be stayed, arrested, or in any manner affected for any defect or imper-

fection which does not tend to the prejudice of the substantial rights of the defendant upon the merits. The omission of the purely expletive " feloniously " could not by any possibility tend to the prejudice of Wagner upon the merits.

It is urged, however, that the evidence was insufficient to sustain this verdict against Zoeth Wagner, and we think this assignment well taken. The evidence tends to show that on the afternoon preceding the events upon which the information is based Koontz and Lawrence Wagner, both more or less intoxicated, were entertaining themselves by riding a horse back and forth on the sidewalks of the town of Lushton. Salmen, who was employed in a store in the town, remonstrated with them and an altercation ensued between him and Koontz. Salmen withdrew into the stoie. Koontz and Lawrence Wagner soon after dismounted and Lawrence Wagner entered the store and used language towards Salmen of a character tending to incite the latter to violence. The proprietor of the store compelled them to desist, when Lawrence Wagner invited Salmen to come outside, and repeated the offensive language. Salmen accepted the invitation, and going outside, an affray took place in which Lawrence Wagner received what seems to be a well merited punishment. Salmen then returned to the store. Some time afterwards and about dark Koontz entered the store and quietly addressing Salmen asked him to come outside, saying he wished to speak to him. Salmen went out and the altercation of the afternoon was at once renewed. Both men took off their coats, but the sleeve of Koontz did not at once slip over his right hand. When Koontz got his coat removed the men started for one another and almost simultaneous blows were struck. Koontz's blow was received by Salmen on the top of his head and turned out to be a stab with a knife. Koontz struck again, stabbing Salmen in the breast. Salmen called out to the by-standers that Koontz had a knife, to take it

away from him.   Either by Salmen's efforts or the action
of the by-standers the knife was then wrenched from
Koontz's hand, when Salmen proceeded to knock Koontz
down and administer a somewhat severe punishment to
him.   Spectators then interfered, Salmen went to a physi-
cian to have his wounds dressed, and Koontz was placed
under arrest.   The evidence connecting Zoeth Wagner with
the occurrence is as follows: Zoeth Wagner lived a short
distance from the town with his father.   About the time
of Salmen's affray with Lawrence, Koontz went to the
Wagner house accompanied by a man who testifies that
when they reached the house Koontz knocked at the door
and Zoeth came out.   A whispered conversation occurred
between Zoeth and Koontz.   The witness and Koontz
started back to town and Zoeth overtook them as they
walked.   There is evidence to show that after reach-
ing town a short conversation took place between Law-
rence and Zoeth.   Zoeth afterwards stood outside the store
and was there while Koontz was within and when he
came out followed by Salmen.   There is testimony tending
to show that when Koontz's sleeve caught as he was taking
his coat off, Zoeth called out to Salmen, "Don't jump onto
him until he gets his coat off," and that after Koontz got
his coat off Zoeth said, addressing Koontz, " Give it to him
now you have got him, give it to him."   There is evidence
tending to show that after the knife was taken or fell from
Koontz's hand, and while Salmen was beating Koontz,
Zoeth made some effort to make his way through the crowd
and reach the combatants.   Zoeth Wagner relates the con-
versation between him and Koontz at the Wagner house,
and his is the only testimony upon the subject.   He says
that Koontz informed him that his brother Lawrence
wished him to come to town; he asked if Lawrence was
drunk; Koontz said he was.   The conversation was held
in a low tone to prevent the father of the Wagners from
hearing it.   Zoeth then finished his supper and started to

town for the purpose of looking after Lawrence. We
think that thus far the evidence would be sufficient to war-
rant the jury in finding that Zoeth abetted Koontz in an
assault on Salmen, but there is certainly nothing so far to
justify the inference that he was a participant in the pur-
pose of stabbing Salmen or in the intent of wounding him.
Several witnesses testify that Zoeth Wagner was in the
store after the affray; that Koontz was brought in and
that a low conversation occurred between him and Zoeth.
One witness testifies that he heard Koontz ask Zoeth if the
latter had got his (Zoeth's) knife; the answer was not
heard.    There is no evidence that the knife used belonged
to Zoeth or had ever been in his possession, although the
knife was produced at the trial.    On the contrary, there is
evidence that a similar knife had been seen in Koontz's
possession several days before.    If in order to constitute
Zoeth guilty of the offense of which he was convicted it
was necessary to show that he participated in Koontz's in-
tent of wounding Salmen, we do not think this evidence
in a criminal case is sufficient to establish such participation.
If there were any proof that the knife belonged to Zoeth the
case might be different; but it would be to establish a fel-
ony on very slender evidence if a witness' recollection as to
the use of a pronoun in an overheard whispered question to
which the answer was not heard were permitted to supply
this proof.    We therefore proceed upon the ground that
the evidence was sufficient to justify the jury in finding
that Zoeth had in some manner counseled, aided, or abetted
Koontz in making an assault upon Salmen, but that it was
insufficient to show that Wagner contemplated an assault
with a knife with the intention on the part of Koontz of
wounding Salmen.    Under this state of facts was Salmen
guilty as an accessory to the felonious assault?    We think
the general rule is that one who counsels or invites another
to perpetrate an act is responsible not only for that act, but
for all the probable consequences of such counsel, and we are

aware that if it be shown that several conspire to commit an offense, and if in the act of committing that offense another is committed, there are cases that hold that all engaged in the conspiracy are responsible for the latter crime. This is the effect of all the cases cited by the attorney general in support of this conviction. But this is a crime of a peculiar nature. The intent to wound by stabbing is an essential element of the principal offense, and where a particular intent is requisite to constitute a crime, one who is not present, in order to be an accessory before the fact, must have participated in that particular intent. (*Meister v. People*, 31 Mich., 99; *Savage v. State*, 18 Fla., 909.) Where a specific intent is not an element of the offense, one who instigates an act, the natural and probable consequence of which is the commission of other acts constituting such offense, may be reasonably charged as accessory thereto. But where a specific intent is essential to constitute an offense, how can it be said that one who instigates an entirely different act, neither knowing nor contemplating the formation of that specific unlawful intention on the part of the person instigated, nor intending to place such intention in his mind, is guilty of having procured, aided, or abetted the offense to which such intent is essential? We think the jury was not warranted from the evidence referred to in finding that Zoeth Wagner either knew of the intention on the part of Koontz to stab and wound Salmen, or that with the intention himself of having Salmen wounded he instigated Koontz to assault him. The judgment against Zoeth Wagner is, therefore, reversed and the cause as to him remanded for a new trial.

JUDGMENT ACCORDINGLY.