JOSEPH R. BASKINS v. STATE OF NEBRASKA.

293 N. W. 270

FILED JUNE 28, 1940.   No. 30509.

*Hoagland, Carr & Hoagland* and *Beeler, Crosby & Baskins*, for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Milton C. Murphy, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

In a prosecution by the state of Nebraska in the district court for Lincoln county, Joseph R. Baskins, Clyde D. Macomber and Albert A. Hastings, defendants, were charged in the first count of the information by the county attorney with the kidnaping of the complaining witness, Sam I. Pappas, November 21, 1937; in the second count with robbing him of $275; in the third count with making an assault upon him with intent to inflict great bodily injury.

A motion by Joseph R. Baskins, defendant, for a change of venue was sustained and he was tried in the district court for McPherson county. The counts for kidnaping and

robbery were dismissed with the consent of the state's attorneys. The jury found Baskins guilty of assault with intent to inflict great bodily injury and for that felony he was sentenced to serve a term of two years in the penitentiary. As plaintiff in error he presents for review the record of his conviction.

It is argued as a ground of reversal that the evidence does not prove that defendant committed the assault charged nor the intent to inflict great bodily injury.

The relationship of the three defendants to each other and to the city government of North Platte are important factors in a review of the conviction. At the time of the felony charged, defendant Macomber was a member of the police force, a patrolman. Defendant Baskins was a member of the city council and chairman of the police committee. Defendant Hastings conducted an insurance and loan business in North Platte and was active in city politics. The evidence justifies a finding that the three defendants named had entered into a conspiracy to compel Sam I. Pappas to confess to a felony of which he was not guilty, a confession which might lead to a long term of service in the penitentiary. There is also evidence of the following facts: Macomber and Baskins drove to the home of Pappas in a police cruiser not long before midnight, Sunday, November 21, 1937. Macomber intimated that something for the good of Pappas was contemplated and the latter consented to leave home in the cruiser with the city officials. Pappas had not been accused of any offense and there had been no warrant for his arrest. He was not told he was under arrest. He was taken to Macomber's room, 25 in the Ritner hotel, without knowledge of what was in store for him there. Hastings was promptly called to the hotel by telephone and while the four men, Macomber, Baskins, Hastings and Pappas, were in room 25, with the door closed and bolted on the inside, Macomber made a demand on Pappas to confess he had committed a felony. The latter asserted his innocence and refused to confess. Threats to make him do so were made. Baskins and Hastings held Pappas while

Macomber beat him. Pappas tried to escape, unbolted the door and got into the hall outside, was beaten there, dragged back into the room where the beating was continued. After the beating and turmoil ceased in room 25 with the departure of the four occupants, there was blood on the walls, on the floor, on a rug in front of the bed, on the bedspread, on the drapes, on the walls in the hall and on the radiator. Physical injuries inflicted on Pappas, as described by a physician who examined him in a hospital to which he had been taken promptly and, as related in the majority opinion in *Macomber v. State,* 137 Neb. 882, 291 N. W. 674, were as follows:

"Face badly bruised; eyes swollen shut; deep cut, with ragged edges, an inch long over the left eye; slighter cut over same eye; nose skinned; lip cut on right side; inside of cheek bruised on upper right side; lacerations close to the lips; right side of face puffed with air, passing under the tissues and extending over the entire side of head and face to margin of collarbone; portion of air breathed passed through torn tissues under the skin, over the side of the face and neck; lachrymal bone fractured; whites of both eyes red; bump on head back of ear; stitches required to close wounds."

There is cogent evidence of the foregoing facts. Moreover the logical inference from all the testimony is that the motive for the assault and for the attempt to compel Pappas to confess a felony which would subject him to a long term in the penitentiary was to get rid of him as a gambler whom the trio had unlawfully protected and thus procure for themselves profits of gambling.

The assault was designated by defendant as a fist fight started by Pappas, but the jury reached a different conclusion. Pappas, in advance, was known to be unarmed. Macomber was in uniform and armed. Locked in a room with him, with the city lawmaker and with the local politician, Pappas was helpless. His eyesight had been impaired and his strength had been weakened by a disease of long standing. Naturally the absurdity of such a defense under

the circumstances would not escape the attention of the jury as evidenced by their verdict of guilty.

Defendant contends and argues that he did not strike Pappas and did not intend to inflict great bodily injury and that these elements of the felony charged were not proved. As city officers, Baskins was the superior of Macomber, saw the assault from beginning to end and did not stop it. There is evidence that Baskins and Hastings held Pappas while Macomber made the assault, and thus aided in the commission of it. The law is as follows:

"Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender." Comp. St. 1939, sec. 28-201.

On the issue of intent, an adult sane person may be presumed to intend the natural and probable consequences of his voluntary acts. *Ford v. State,* 46 Neb. 390, 64 N. W. 1082. Criminal intent or felonious purpose may be shown by circumstances. *Buckley v. State,* 131 Neb. 752, 269 N. W. 892; *Jurgensen v. State,* 135 Neb. 537, 283 N. W. 228.

Every element of the felony charged was clearly proved and the jury were justified by the evidence in finding Baskins guilty beyond a reasonable doubt.

The appointment of Milton C. Murphy as assistant prosecutor and his conduct in that capacity are criticized as grounds for setting aside the verdict. The record does not show such prejudice against defendant as to disqualify Murphy as a prosecutor. It does show, however, that he was improperly provoked by counsel for defendant at times into unbecoming retorts and breaches of etiquette. Counsel on both sides were repeatedly admonished by the court for misconduct of this kind. In criminal law the right of the state to prove the guilt of defendant by lawful methods is as important as the right of the defendant to a fair and impartial trial. The law does not permit defendant or his counsel, without reason or excuse, to provoke the prosecuting attorney into unbecoming retorts or breaches of etiquette and thus make such misconduct a ground for a new trial without regard to guilt, though proved beyond a rea-

sonable doubt. *Flannigan v. State,* 125 Neb. 519, 250 N. W. 908. For the most part the asperities were directed to counsel and not to defendant. Unless he was prejudiced by misconduct, the statute and the rules of court forbid a reversal on that ground. Comp. St. 1929, sec. 20-853; *O'Connor v. State,* 123 Neb. 471, 243 N. W. 650; *Flannigan v. State,* 125 Neb. 519, 250 N. W. 908. The assignments of error relating to misconduct of counsel have all been examined without finding error prejudicial to defendant. The evidence of guilt makes a strong appeal to common sense, reason and judgment and accounts for the verdict instead of misconduct of counsel.

A reversal is also demanded on the ground that assistant prosecutor abused his privileges as such and prevented a fair and impartial trial by applying epithets to defendant and otherwise using improper language in his address to the jury. The record shows that he used some intemperate language, but, when what he said is considered in connection with the testimony of witnesses, it is no more severe in import than legitimate inferences in argument from the evidence of guilt before the jury. Though open to criticism in some particulars, the address of the assistant prosecutor to the jury was not such as to vitiate the verdict.

There are many other assignments of error, but the record has been considered from beginning to end without finding an error entitling defendant to a new trial.

AFFIRMED.

SIMMONS, C. J., dissenting.

It is not for us to consider disputed questions of fact and intent and determine the guilt or innocence of an accused person. In criminal cases juries determine the facts; courts determine the law. It is our sworn duty to examine the record presented and from that determine whether or not the constitutional and legal rights of an accused have been safeguarded and a fair trial and conviction had.

I join with the majority of this court in condemning the acts of which the defendant, Hastings, and Macomber stand charged. I do not share their opinion that the defendant has

had that fair and impartial trial the law guarantees to every person no matter how depraved he may be or how reprehensible the act with which he is charged. The liberty of the defendant is not alone involved. The liberty of every person depends upon the proper protection by the courts of the rights of every accused person. There must be no exceptions to this rule.

Information was filed jointly against Baskins, Hastings, and Macomber, charging them in three counts with kidnaping, robbery, and assault with intent to inflict great bodily injury. The defendant Baskins was tried separately. The special prosecutor in his opening statement told of the charges of kidnaping, robbery, and assault against the three men, presented the state's theory of the crimes, and related its version of the evidence as to all three alleged crimes in detail. The defendant moved separately to withdraw each count from the consideration of the jury. His motions were overruled. The state then proceeded to offer generally the same evidence, as to all three alleged crimes, that was introduced in the trial of the other defendants. Repeated objections to the introduction of much of the evidence were overruled, and the whole story of all three alleged crimes went to the jury.

At the close of the state's case, the jury were excused. The defendant moved to dismiss count one (kidnaping) of the information. At the suggestion of the state, the court reserved its ruling "for awhile." The defendant then moved to dismiss the count relating to robbery. On this motion the state stated that it had been unable to locate two witnesses, and that, without their testimony, it felt that "perhaps the evidence is insufficient to justify" submitting the issues upon the robbery count to the jury. After a motion to dismiss count three was overruled, the state's attorneys asked time for a conference. Conference was had, and thereafter one of the state's attorneys stated that, although they believed the evidence sufficient to sustain a conviction of kidnaping, in view of the evidence, the severity of the punishment, the age of the defendant, his circumstances, his mental

and physical condition, "the state doesn't feel justified in asking for a conviction," and therefore requested the court to dismiss the kidnaping charge. The court sustained the motion. The defendant then renewed his several motions to strike the testimony of witnesses relative to evidence as to the crimes charged in the dismissed counts. The motions were overruled. (At the conclusion of all testimony, these motions were again made and again overruled.) The jury returned, and the court advised them that it had dismissed the robbery charge for insufficient evidence, "and with reference to count one, it is the opinion of the county attorney that he would prefer not to proceed further with said count."

It is obvious that, at the beginning of the trial, the state knew it could not produce the witnesses necessary to sustain the robbery charge; it is likewise obvious that the reasons that prompted the state to dismiss the kidnaping charge existed before the trial, and yet the state proceeded to offer testimony which it claimed sustained those charges, got to the jury whatever damaging effect that evidence created against the defendant, and then dismissed the charges, and the trial court refused to strike the testimony of the witnesses relating to those charges. This procedure should not be condoned. The evidence as to the two dismissed charges might well have had an important, if not a controlling, effect upon the jury in their finding of guilt upon the felony charge. It is no answer to this procedure to say that the jury could have found the defendant guilty without this evidence. The defendant was entitled to trial, as a matter of right, with the evidence limited to that competent testimony going to establishing the crime with which he was finally charged. This testimony should not have been offered by the state. It should have been stricken by the court and the jury promptly instructed not to consider it.

I shall not further discuss the errors assigned as to the evidence except to point out that the court permitted several witnesses to testify to statements made and acts done on

the night in question by third parties at times when the accused was not present; that evidence of two separate beatings administered to Pappas by Macomber, not in the presence of the defendant, was presented to the jury for their consideration; that Baskins did not strike Pappas; that evidence of the crime of sodomy by third parties, including the identification of the parties present in the courtroom, was submitted to the jury. The repeated objections of the defendant to the admission of all of such evidence and defendant's motions to strike and to instruct the jury not to consider it were of no avail.

The majority opinion entirely ignores the assignments of error relating to the instructions to the jury.

The "intent to inflict a great bodily injury" on Pappas is an essential element of the crime. Comp. St. 1929, sec. 28-413.

The trial court by instruction No. 8 told the jury that "whoever aids, abets or procures another to commit any felony is treated in law as though he was the principal offender," that if they found that Macomber, or Hastings, or both of them committed the crime of assault with intent to inflict a great bodily injury, and that if they further found that Baskins either aided, abetted, or procured Macomber and Hastings or either of them to make the assault and beat Pappas "and at the time of the striking and beating of the said Sam I. Pappas the said Joseph R. Baskins, Clyde D. Macomber, or either of them, did so with intent of unlawfully and feloniously inflicting upon the said Sam I. Pappas great bodily injury," then they would find the defendant Baskins guilty.

By instruction No. 11 the court instructed the jury that the intent of Baskins to do great bodily harm to Pappas was an essential element of the crime charged against Baskins and that, if they found that he did not have that intent, they should find him not guilty.

Thus it will be seen that, by instruction No. 8, the jury were told that the intent to do great bodily harm to Pappas of either Macomber or Baskins was sufficient to convict

Baskins of a felony, and by instruction No. 11 that Baskins had to have that intent. The conflict and the confusion in the two instructions on the essential important element of intent are apparent. Who knows which instruction the jury followed? Certainly this court does not.

The state argues that instruction No. 8 is correct, that instruction No. 11 was more favorable than the defendant was entitled to, and, therefore, the defendant was not prejudiced.

The instruction is evidently an effort of the trial court to apply section 28-201, Comp. St. 1929, to this case. This court has held: "The unquestioned purpose of the last (above) act was to eliminate the common-law distinction between principals and accessories before the fact, and to provide for the punishment and trial of accessories before the fact as principals." *In re Resler*, 115 Neb. 335, 212 N. W. 765. Under the above act, accessories may be prosecuted and punished under the same rule as to the information, conduct of the case, and punishment that are applicable to the principal. *Scharman v. State*, 115 Neb. 109, 211 N. W. 613.

It is not my understanding that the above cited statute changes or modifies any of the elements that constitute the offense. By instruction No. 8 the jury were told proof of the intent of the principal was sufficient. The question then comes: Is it necessary to prove the intent of the accessory to inflict great bodily harm? This court has held that it is.

In *Wagner v. State*, 43 Neb. 1, 61 N. W. 85, a prosecution was had under the provisions of the former statute which required that the accessory be so charged. An information was filed charging one Koontz with stabbing Salmen with intent to wound. Wagner was charged with aiding and abetting Koontz in the perpetration of the crime and found guilty of being an accessory before the fact of stabbing with intent to wound. This court there said: "We think the general rule is that one who counsels or invites another to perpetrate an act is responsible not only for that act, but for all the probable consequences of such counsel, and we

are aware that if it be shown that several conspire to commit an offense, and if in the act of committing that offense another is committed, there are cases that hold that all engaged in the conspiracy are responsible for the latter crime. This is the effect of all the cases cited by the attorney general in support of this conviction. *But this is a crime of a peculiar nature. The intent to wound by stabbing is an essential element of the principal offense, and where a particular intent is requisite to constitute a crime, one who is not present, in order to be an accessory before the fact, must have participated in that particular intent. Meister v. People,* 31 Mich. 99; *Savage v. State,* 18 Fla. 909. Where a specific intent is not an element of the offense, one who instigates an act, the natural and probable consequence of which is the commission of other acts constituting such offense, may be reasonably charged as accessory thereto. But where a specific intent is essential to constitute an offense, how can it be said that one who instigates an entirely different act, neither knowing nor contemplating the formation of that specific unlawful intention on the part of the person instigated, nor intending to place such intention in his mind, is guilty of having procured, aided, or abetted the offense to which such intent is essential? We think the jury was not warranted from the evidence referred to in finding that Zoeth Wagner either knew of the intention on the part of Koontz to stab and wound Salmen, or that with the intention himself of having Salmen wounded he instigated Koontz to assault him."

The fourth paragraph of the syllabus is: "Where a particular intent is an essential element of a crime, one is not guilty as an accessory before the fact to such crime unless he participates in or has knowledge of such intent." See, also, 16 C. J. 129, and cases there cited.

The failure to prove that intent on the part of Wagner was held sufficient to require a new trial. If it is necessary to prove that the accessory participated in or had knowledge of the intent, then it is necessary that the jury find that the intent existed in the accessory's mind or that he

had knowledge of that intent on the part of his principal. It follows that under instruction No. 8, basing that finding upon the intent of Macomber, not participated in and not known to Baskins, the jury could have found Baskins guilty. It necessarily follows that this instruction is prejudicially erroneous.

Although the majority opinion states: "The evidence justifies a finding that the three defendants named had entered into a conspiracy to compel Sam I. Pappas to confess to a felony," it should be pointed out that the defendant was not charged nor tried as a conspirator, and there is absolutely no evidence that any conspiracy or even discussion of a plan or purpose to assault Pappas was formed by any of the three defendants. As this court points out in *Wagner v. State, supra,* the evidence admissible in conspiracy cases is distinctly different from the evidence admissible in cases such as here charged.

The majority excuse the misconduct of the state's counsel by holding that the defendant's counsel were likewise guilty of misconduct. Even so, such fact does not justify the actions of counsel for the state. Neither does it justify waiving the misconduct which was prejudicial to the accused.

The majority opinion relies upon *Flannigan v. State,* 125 Neb. 519, 250 N. W. 908, to sustain its position that the conduct of counsel for the state was not prejudicial. In the *Flannigan* case, the statements made by both counsel were directed at each other, not to the defendant, and the trial court promptly rebuked them and instructed the jury to pay no attention to the statements. This court there said that, "in view of the rebuke from the bench and the instructions to the jury," the defendant Flannigan was not prejudiced. In the instant case, the remarks and actions complained of were directed at the defendant Baskins, and there was neither rebuke from the bench nor instructions to the jury. The distinction is apparent. In *Cooper v. State,* 120 Neb. 598, 234 N. W. 406, this court in reversing a conviction for prejudicial remarks of the prosecutor (Rose, J.,

dissenting) said: "The court should have stopped this line of argument, reprimanded the attorney, and at least have instructed the jury to disregard it. * * * In a criminal case, the defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. This presumption of innocence is a matter of evidence in favor of the defendant, and continues throughout the trial until he is found guilty from the evidence beyond a reasonable doubt, after a trial surrounded with an atmosphere of fairness, undisturbed by prejudice, passion or ill will. * * * Trial judges and public prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial, uninfluenced by prejudice, passion and public clamor."

I shall not further extend this dissent. From its inception down to and including the oral argument in this court, this case has been conducted with a spirit, upon a plane, and in an atmosphere, not in keeping with the high standards of the administration of criminal justice, which courts, lawyers, and citizens alike stand pledged to maintain. The third degree methods employed against Pappas do not justify courts condoning the methods and procedure here used to secure a conviction. This cause should be reversed and remanded for further proceedings *according to law.*

JOHNSEN, J., dissenting separately.

We have previously reversed the convictions in the two companion cases of *Macomber v. State,* 137 Neb. 882, 291 N. W. 674, and *Hastings v. State,* p. 365, *post,* 293 N. W. 236, and I feel that this case should go back with the others for a new trial. There is so much feeling reflected in the records in all three cases, that I am of the opinion that the trial atmosphere bore a community stamp, which subordinated the charges involved. I do not believe that this stamp was removed by a mere transfer of the Thespian performance in this case from Lincoln county to McPherson county. The questions of local political and gambling control should by this time have cooled off sufficiently so that the trial can get down to a simple presentation of the facts that demon-

strate guilt. I have nothing but condemnation for the things with which the defendants are charged, but an accused's civil rights still entitle him to something more than a hand ball game for a trial.