Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/02/2024 09:07 AM CDT

State of Nebraska, appellee, v.
James M. Briggs, Jr., appellant.

___ N.W.3d ___

Filed August 2, 2024.    No. S-23-521.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

3. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.

4. **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.

5. **Jury Instructions: Appeal and Error.** The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.

6. **Criminal Law: Motions to Dismiss: Directed Verdict.** In a criminal case, a motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict. And a motion for a directed verdict is simply another name for a motion for judgment of acquittal. All three motions assert that the defendant should be acquitted of the charge because there is no legally sufficient evidentiary basis on which a reasonable jury could return a guilty verdict.

7. **Motions to Dismiss: Directed Verdict: Convictions.** Whether styled as a motion to dismiss, a motion for directed verdict, or a motion for judgment of acquittal, such a motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction.

8. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

9. **Effectiveness of Counsel: Proof.** To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

10. ____: ____. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

11. **Criminal Law: Statutes.** When a criminal statute describes an offense by using common-law terms without further definition, the offense is to be construed with reference to the common law.

12. **Battery: Words and Phrases.** The phrase "[u]nlawfully strikes or wounds another" in Neb. Rev. Stat. § 28-309(1)(c) (Reissue 2016) is referring to common-law battery.

13. **Criminal Law: Battery: Words and Phrases.** In the criminal context, common-law battery must be "willful," meaning the contact was made intentionally, recklessly, or with criminal negligence; accidental or inadvertent contact is not sufficient.

14. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

15. **Criminal Law: Statutes: Sentences: Legislature.** Where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that

provided by the amendatory act unless the Legislature has specifically provided otherwise.

Appeal from the District Court for Lancaster County, Kevin R. McManaman, Judge. Affirmed in part, and in part sentence vacated and cause remanded with directions.

F. Matthew Aerni, of Aerni Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In this direct appeal, James M. Briggs, Jr., challenges his convictions and sentences for two counts of second degree assault. He contends the jury instructions omitted a material element of the offenses, and he seeks resentencing based on statutory amendments that became effective after the sentencing hearing but while this direct appeal was pending. We affirm his convictions but remand the matter for resentencing.

## I. BACKGROUND

### 1. Information

Briggs was charged by information in the district court for Lancaster County with two counts of second degree assault, in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016), both Class IIA felonies. In Nebraska, the offense of second degree assault is committed if one

(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument;

(b) Recklessly causes serious bodily injury to another person with a dangerous instrument; or

(c) Unlawfully strikes or wounds another (i) while legally confined in a jail or an adult correctional or penal institution, (ii) while otherwise in legal custody of

the Department of Correctional Services, or (iii) while committed as a dangerous sex offender under the Sex Offender Commitment Act.[1]

Both counts charged Briggs using the language of § 28-309(1)(c)(i) and alleged that he "did unlawfully strike or wound [the victim] while legally confined in a jail or an adult correctional or penal institution." The charges were based on an incident that occurred on April 21, 2021, while Briggs was confined in what was then called the Lincoln Correctional Center (LCC). The alleged victims were two LCC employees. The information was subsequently amended to include an allegation that Briggs is a habitual criminal.

Briggs entered pleas of not guilty, and the matter proceeded to trial.

## 2. Trial Evidence

A jury trial was held in May 2023, and both victims testified. One victim, LCC employee Parwiz Masoodi, testified that on April 21, 2021, he was working at LCC on unit "C," which housed "mental health inmates." Briggs was one of the inmates in the unit. Masoodi's job involved direct contact with inmates, and he was responsible for escorting them through the facility, including escorting inmates to and from a yard area for exercise.

Briggs wanted to exercise his yard time that day, so Masoodi escorted him through the facility and to the padlocked door that opened into the yard. Masoodi testified that as he was opening the padlock, Briggs began punching him. Masoodi told Briggs to stop and called for help, but Briggs continued punching. During the attack, which was captured on LCC's internal security cameras, Masoodi estimated he was punched in his face and head approximately 15 to 20 times.

The security camera footage was received into evidence and played for the jury. The footage shows Briggs using his

---

[1] § 28-309(1).

hands and fists to attack Masoodi as they approach the yard. It then shows Masoodi restraining Briggs by bringing him to the ground while additional LCC employees arrive to assist in restraining Briggs.

Another victim, LCC employee Desaray Kerns, testified that on April 21, 2021, she was working as a case manager on unit "C" at LCC and was Masoodi's supervisor. She heard an inmate yell that a staff member was being assaulted, and she observed that Masoodi had Briggs on the ground and was trying to control him. Kerns attempted to assist by controlling Briggs' lower body, and when she did, Briggs kicked her at least twice in the face.

Both Masoodi and Kerns were photographed after the incident, and the photographs were received into evidence. Both Masoodi and Kerns sustained bruising and received emergency medical care after the incident, but there is no claim that either sustained a serious bodily injury.

## 3. Motion to Dismiss

After the State rested, Briggs moved at a sidebar to dismiss both counts. The entirety of his oral motion was "defense would move to dismiss both counts against . . . Briggs on the grounds that the State has failed to produce a prima facie case as to each charge — as to all of the elements of these charges." The district court overruled the motion, stating it had "been attentive in the trial thus far and believe[d] the State ha[d] established sufficient evidence" to submit the case to the jury. Briggs waived his right to testify and rested without introducing any evidence.

## 4. Jury Instructions

Jury instruction No. 4 set out the material elements of the crime and stated in relevant part:

Regarding the crime of Assault in the Second Degree, the State must prove beyond a reasonable doubt that [Briggs]:

 1. Did intentionally or knowingly strike or wound [the victim];

 2. He did so on or about April 21, 2021, in Lancaster County, Nebraska; and

 3. He did so while legally confined in a jail or an adult correctional or penal institution, or while otherwise in legal custody of the Department of Correctional Services.

At the jury instruction conference, Briggs objected to this instruction and asked the court to substitute his proposed elements instruction, which provided the State had to prove beyond a reasonable doubt the following:

 1. [Briggs] struck or wounded another;

 2. That he did so intentionally or knowingly;

 3. That he did so when [he] was legally confined in jail or adult correctional or penal institution or when he was otherwise in the legal custody of the Department of Correctional Services; and

 4. That he did so on or about April 21, 2021, in Lancaster County, Nebraska.

The court stated that it had reviewed Briggs' proposed elements instruction and had already incorporated some of it into instruction No. 4. It otherwise denied Briggs' request to substitute his proposed elements instruction.

### 5. Verdict and Sentencing

The jury returned a guilty verdict on both counts of second degree assault. The court accepted the verdicts, entered judgment, and scheduled a sentencing hearing for July 6, 2023.

At sentencing, the State offered certified copies of Briggs' prior convictions for the purpose of enhancement, and the district court received the exhibits over Briggs' objections. The district court found that Briggs was a habitual criminal and, relying on Neb. Rev. Stat. § 29-2221 (Reissue 2016), sentenced Briggs on each conviction to an indeterminate term of 10 to 12 years' imprisonment, with a 10-year mandatory minimum on both. It ordered the sentences to be served

consecutively to each other and to the sentence Briggs was already serving.

Briggs filed this timely appeal through newly appointed appellate counsel. We moved the appeal to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Briggs assigns, restated and consolidated, that the trial court erred in (1) giving jury instruction No. 4 and (2) overruling his motion to dismiss. He also asserts that his trial counsel was ineffective in failing to object to instruction No. 4 and in failing to advise the trial court of amendments to the habitual criminal statute.

## III. STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[2] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[4]

[3,4] Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional

---

[2] *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024).

[3] *Id*.

[4] *Id*.

requirement.[5] In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.[6]

## IV. ANALYSIS

### 1. Challenge to Elements Instruction

Briggs was charged with two counts of violating § 28-309(1)(c)(i), which provides that a person commits the crime of second degree assault if he or she "[u]nlawfully strikes or wounds another . . . while legally confined in a jail or an adult correctional or penal institution." In his first assignment of error, Briggs argues that the elements instruction given to the jury was improper because (1) it did not expressly instruct the jury that "an essential element of the second-degree assault was 'unlawful' action"[7] and (2) it did not define "'unlawful'" action.[8]

[5] But Briggs did not object to the elements instruction on either of these grounds during the instruction conference. Nor did his proposed elements instruction include reference to the term "unlawfully" or purport to define that term. The failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.[9] We therefore conclude that Briggs has not preserved this argument for appellate review, and we decline to review it for plain error. We do, however, address the substance of this argument later in the opinion when examining Briggs' claim of ineffective assistance of trial counsel.

---

[5] *Id.*

[6] *Id.*

[7] Brief for appellant at 18.

[8] *Id.*

[9] *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

## 2. Motion to Dismiss/Insufficiency
### of Evidence

[6,7] In his second assignment of error, Briggs argues the trial court erred in denying his motion to dismiss at the close of the State's evidence. In a criminal case, a motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict.[10] And a motion for a directed verdict is simply another name for a motion for judgment of acquittal.[11] All three motions assert that the defendant should be acquitted of the charge because there is no legally sufficient evidentiary basis on which a reasonable jury could return a guilty verdict.[12] Thus, however styled, this type of motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction.[13]

Briggs contends that, based on the language of § 28-309(1)(c), "unlawful"[14] conduct is a material element of the charged crimes, and he argues the State failed to prove this element. But the appellate record demonstrates that the trial court was unaware of his contention that "[u]nlawfully" was a material element of the crimes charged. That is so because when Briggs moved to dismiss, he made only a general argument that the evidence was insufficient to demonstrate a prima facie case on all the elements. Briggs did not argue that the term "unlawfully" was a material element of the offense, nor did he argue—to either the court or the jury—that there was insufficient evidence showing his conduct was unlawful. Instead, Briggs' closing argument referred the jury to the "intentionally or knowingly" language included by the court in instruction No. 4, and Briggs argued the State's evidence was insufficient to prove beyond a reasonable doubt that he

---

[10] *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] Brief for appellant at 15.

intentionally or knowingly struck or wounded Masoodi and Kerns. The jury rejected that argument.

Because Briggs presents an argument on appeal that was not presented to, considered by, or ruled upon by the trial court in connection with his motion to dismiss, he has failed to preserve the issue for appellate review.[15] As explained next, however, we address the substance of this argument when considering Briggs' claim of ineffective assistance of trial counsel.

### 3. Ineffective Assistance Claims

Briggs argues that his trial counsel was ineffective in two respects: (1) failing to object to instruction No. 4 and (2) failing to advise the trial court of amendments to the habitual criminal statute at the time of sentencing. Before addressing these claims of ineffective assistance, we recall the general principles that govern our review of such claims on direct appeal.

[8-10] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[16] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[17] To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[18]

---

[15] E.g., *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial court).

[16] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[17] *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

[18] *Id.*

With these principles in mind, we analyze each of Briggs' ineffective assistance claims.

(a) Claim Related to Elements Instruction

Briggs argues his trial counsel performed deficiently because (1) he did not object to instruction No. 4 on the ground that it failed to instruct that "an essential element of the second-degree assault was 'unlawful' action"[19] and (2) he did not request an instruction defining "'unlawful'" action.[20] Briggs contends he was prejudiced thereby because instruction No. 4, as given, allowed the jury to convict him of second degree assault "without requiring the jury to consider an essential element of the charged offense."[21]

We understand Briggs to argue that because § 28-309(1)(c) proscribes "[u]nlawfully" striking or wounding another, the State was required to prove that his conduct violated some other law, and he contends the State could have done so by "something so basic as [introducing] a certified copy of a statute criminalizing disturbing the peace."[22] We think Briggs' singular focus on the term "unlawfully" is misplaced.

Section 28-309(1)(c) uses the phrase "[u]nlawfully strikes or wounds," and we consider the entire statutory phrase in context.[23] In *State v. Levell*,[24] we recognized that this statutory language is a codification of "the basic law of assault and battery." Similarly, in *Wagner v. State*,[25] we explained

---

[19] Brief for appellant at 18.

[20] *Id*.

[21] *Id*. at 23.

[22] *Id*. at 17.

[23] *McGill Restoration v. Lion Place Condo. Assn.*, 313 Neb. 658, 664, 986 N.W.2d 32, 37 (2023) (reciting rule that when construing statutes, "our focus is, as always, identifying the plain and ordinary meaning of the statutory language, understood in context, and then giving effect to that meaning").

[24] *State v. Levell*, 181 Neb. 401, 404, 149 N.W.2d 46, 49 (1967).

[25] *Wagner v. State*, 43 Neb. 1, 3, 61 N.W. 85, 86 (1894).

that the phrase "'unlawfully strike or wound another'" is "substantially the common[-]law definition of a battery."

[11,12] It is well settled that when a criminal statute describes an offense by using common-law terms without further definition, the offense is to be construed with reference to the common law.[26] We apply this principle to construe the phrase "[u]nlawfully strikes or wounds another" in § 28-309(1)(c), and conclude it is referring to common-law battery.

[13] Nebraska has generally defined the elements of common-law battery as "intentional, unlawful physical violence or contact inflicted on a human being without . . . consent."[27] At common law, the crime of battery "consisted of 'the unlawful application of force to the person of another,' including an offensive touching."[28] Common-law battery thus requires "unlawful"[29] or "offensive"[30] contact, which is generally understood to mean intentional physical contact that is not consented to and is unwarranted by the social usages prevalent at the time and place at which the contact is inflicted.[31] Offensive conduct violates a reasonable sense of personal dignity.[32] We have generally described this as contact that is "'against the wish and will'" of the person contacted.[33]

---

[26] *Id.*

[27] *State v. Auman*, 232 Neb. 341, 344, 440 N.W.2d 254, 257 (1989).

[28] *U.S. v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009) (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 16.2).

[29] *Id*.

[30] See 92 Am. Jur. Trials 1, § 16 (2004). See, also, *Perez Hernandez v. U.S.*, 286 A.3d 990 (D.C. App. 2022); *United States v. Alvarez-Murillo*, No. EP:23-CR-01095-ATB, 2024 WL 1146139 at *4 (W.D. Tex. Mar. 14, 2024).

[31] See *id*.

[32] 92 Am. Jur. Trials, *supra* note 30. See, also, *Alvarez-Murillo, supra* note 30; *Auman, supra* note 27.

[33] *Schleif v. State*, 131 Neb. 875, 877, 270 N.W. 510, 511 (1936).

In the criminal context, common-law battery must be "'willful,'" meaning the contact was made intentionally, recklessly, or with criminal negligence; accidental or inadvertent contact is not sufficient.[34]

[14] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[35] Here, the jury was instructed that in order to convict Briggs of second-degree assault, it had to find beyond a reasonable doubt that "[Briggs] [d]id intentionally or knowingly strike or wound [the victim]." A separate instruction defined "intentionally" to mean "willfully or purposefully, and not accidentally or involuntarily," and defined "knowingly" to mean "with knowledge or perception of facts requisite to make up the crime." We conclude these instructions drew appropriately from the common-law definition of battery and described the elements of the offense in the language of the statute.[36]

Because the elements instruction and related definitions correctly stated the law and encompassed all the material elements of the charged crime, the record on appeal is sufficient for us to conclusively determine that Briggs' trial counsel was not deficient either in failing to object to the elements instruction or in failing to request a separate definition of the term "unlawfully."

### (b) Claim Related to Habitual Criminal Statute

Briggs' second claim of ineffective assistance is premised on amendments made to the habitual criminal statute in

---

[34] See *Alvarez-Murillo, supra* note 30, 2024 WL 1146139 at \*2. See, also, *Perez Hernandez, supra* note 30; *Auman, supra* note 27; *Schleif, supra* note 33; 92 Am. Jur Trials, *supra* note 30.

[35] *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024).

[36] See *State v. Swindle*, 300 Neb. 734, 744, 915 N.W.2d 795, 805 (2018) ("[i]n giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute").

2023, which we discuss in more detail below. Briggs argues that his trial counsel was deficient for failing to bring these amendments to the attention of the trial court at the time of sentencing and for failing to request a sentence in conformity with the amendments. He argues that he was prejudiced by this deficient performance because the mandatory minimum term required by the amended habitual criminal statute is shorter than the mandatory minimum term imposed by the court.

Briggs was sentenced on July 6, 2023, and his notice of appeal was filed the next day. At the time his sentences were imposed, the applicable habitual criminal statute was § 29-2221 (Reissue 2016). Briggs does not contend that his sentences failed to comply with the provisions of § 29-2221 as it existed on the date he was sentenced.

However, Briggs correctly notes that effective September 2, 2023, § 29-2221 was amended to add new provisions in subparagraph (1)(c).[37] Those new provisions of § 29-2221 (Supp. 2023), quoted below, effectively reduce the mandatory minimum term of a habitual criminal enhancement from 10 years to 3 years when certain criteria are met:

> (1) Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years, except that:
>
> . . . .

---

[37] See 2023 Neb. Laws, L.B. 50.

(c) If the felony committed and at least one of the prior felony convictions do not involve sexual contact, sexual penetration, the threat to inflict serious bodily injury or death on another person, the infliction of serious bodily injury on another person, a deadly or dangerous weapon, or a firearm, the mandatory minimum term shall be three years and the maximum term not more than the maximum term for the felony committed or twenty years, whichever is greater. For this subdivision (1)(c) to apply, no prior felony conviction may be a violation described in subdivision (1)(a) of this section[.]

On appeal, Briggs contends that he meets the requirements set out in subsection (c) of § 29-2221(1), and the State does not dispute that contention. As stated, Briggs argues that his counsel was ineffective because he failed to bring the amended provisions of § 29-2221(1)(c) to the attention of the sentencing court and he failed to request sentences in conformity with the amendments. Briggs also argues it was plain error for the trial court not to sentence him under those amended provisions. We disagree.

First, we soundly reject Briggs' suggestion that the trial court plainly erred in not sentencing him under the amended version of § 29-2221. It is undisputed that on the date of Briggs' sentencing hearing, the amendments to § 29-2221 were not yet in effect. The trial court properly utilized the habitual criminal statute in effect at the time of sentencing, imposing sentences that were correct under that statute.

We also reject Briggs' argument that his trial counsel was deficient because "[a]t sentencing, trial counsel did not argue the changes to Neb. Rev. Stat. [§] 29-2221 . . . limited the mandatory minimum sentence on each count of the amended information to a maximum mandatory minimum of 3 years."[38] Because the amended provisions in § 29-2221(1)(c) had not yet become effective, defense counsel was not deficient in

---

[38] Brief for appellant at 23.

failing to argue that the provisions applied to Briggs at the time of his sentencing hearing, and Briggs has not asserted or argued that counsel was deficient in failing to seek a continuance of the sentencing hearing to a date after the amendments became effective.

[15] That said, we conclude that under the circumstances presented here, the law requires that we remand this matter for resentencing under the version of § 29-2221 currently in effect. In *State v. Randolph*,[39] we adopted the rule that "where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise."

The State agrees the *Randolph* rule applies here because the amendment to § 29-2221 mitigated Briggs' punishment, the Legislature did not specifically provide that the amendatory act was not to apply in cases that had not yet reached final judgment, and no final judgment had been entered in this matter.[40] We therefore vacate Briggs' sentences and remand the cause for resentencing under the current version of § 29-2221.

## V. CONCLUSION

For the foregoing reasons, we affirm Briggs' convictions but vacate the sentences and remand the cause for resentencing under the version of § 29-2221 currently in effect.

AFFIRMED IN PART, AND IN PART SENTENCE VACATED
AND CAUSE REMANDED WITH DIRECTIONS.

---

[39] *State v. Randolph*, 186 Neb. 297, 301-02, 183 N.W.2d 225, 228 (1971).

[40] See, e.g., *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996) (recognizing criminal conviction and sentence not considered final judgments until after appeal); *State v. Schrein*, 247 Neb. 256, 526 N.W.2d 420 (1995) (same).