Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/10/2025 09:10 AM CST

State of Nebraska, appellee, v.
Dilang N. Dat, appellant.

___ N.W.3d ___

Filed January 10, 2025.    No. S-23-990.

1.  **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.
2.  **Right to Counsel: Waiver: Appeal and Error.** In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.
3.  **Constitutional Law: Right to Counsel: Waiver.** A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth Amendment and Neb. Const. art. I, § 11.
4.  ____: ____: ____. In order to waive the constitutional right to counsel, the waiver must be made knowingly, voluntarily, and intelligently.
5.  **Right to Counsel.** The right to self-representation is triggered only when a defendant clearly and unequivocally requests self-representation.
6.  **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
7.  **Criminal Law: Words and Phrases.** Physical manifestation of an injury is not required to meet the definition of bodily injury in Neb. Rev. Stat. § 28-109(4) (Reissue 2016).
8.  **Evidence: Proof.** A fact may be proved by direct evidence alone, by circumstantial evidence alone, or by a combination of the two.

9. **Trial: Witnesses: Service of Process: Time: Good Cause.** Neb. Rev. Stat. § 25-1226(2) (Cum. Supp. 2024) requires a subpoena for a trial to be served at least 2 days before the person is ordered to appear and testify, unless a party shows good cause to shorten the period for service.

10. **Trial: Witnesses: Service of Process: Time: Good Cause: Words and Phrases.** "Good cause," for purposes of Neb. Rev. Stat. § 25-1226(2) (Cum. Supp. 2024), refers to all relevant circumstances, including, but not limited to, the need for the testimony, the burden on the person, and the reason why the person was not subpoenaed earlier.

11. **Trial: Witnesses: Service of Process: Time: Appeal and Error.** A trial court's determination regarding the period for service of a subpoena for a trial under Neb. Rev. Stat. § 25-1226(2) (Cum. Supp. 2024) will be upheld on appeal in the absence of an abuse of discretion.

12. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

13. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

14. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

15. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

16. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

17. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

18. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must

demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

19. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

20. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

21. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeal from the District Court for Hall County, John H. Marsh, Judge. Affirmed.

Dana DeSimone, of Kearney & DeSimone Law Offices, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Dilang N. Dat challenges his conviction, pursuant to jury verdict, for assault by a confined person.[1] A novel issue is whether the district court erred in quashing a subpoena obtained after a statutory deadline.[2] Dat also assigns

---

[1] See Neb. Rev. Stat. § 28-932 (Reissue 2016).

[2] See Neb. Rev. Stat. § 25-1226(2) (Cum. Supp. 2024).

error to the overruling of a motion for self-representation, the sufficiency of the evidence at trial, and the effectiveness of trial counsel. Because we find no reversible error or abuse of discretion, we affirm the district court's judgment.

## II. BACKGROUND

We begin with a brief background. Dat's conviction flowed from an altercation between Dat and another inmate, Tilian Tilian, while Dat was confined in the Hall County jail. We will discuss the incident, and other relevant background, in more detail later in the opinion.

After a trial, the jury found Dat guilty of assault by a confined person. The court then sentenced Dat to 1 year of imprisonment, with 228 days' credit for time served, followed by 9 months of post-release supervision.

Dat filed a timely appeal, which we moved to our docket.[3] He is represented by different counsel on appeal.

## III. ASSIGNMENTS OF ERROR

Dat assigns, restated, consolidated, and reordered, that (1) the district court erred in overruling his motion for self-representation, (2) the evidence was insufficient to support his conviction, and (3) the district court erred in quashing a witness subpoena as untimely, as well as trial counsel was ineffective in failing to serve the subpoena before the statutory deadline.

## IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[4] Additional standards will be set forth in the analysis.

## V. ANALYSIS

We would ordinarily begin with the novel issue. But here, other claims provide necessary context. Thus, we analyze the assignments as reordered above.

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[4] *State v. Anderson*, 317 Neb. 435, 10 N.W.3d 334 (2024).

### 1. Motion for Self-Representation

Dat contends that the court erred in overruling his motion for self-representation, finding he did not voluntarily waive his right to counsel.

### (a) Additional Background

Because Dat was indigent, counsel was appointed to represent him. During a final pretrial hearing, defense counsel informed the court that Dat wished to represent himself. The court engaged in a colloquy with Dat, in which he indicated that he "d[id] not waive [his] right to be represented by counsel," but that he was "willing to represent [him]self during the pretrial stage." The following exchange took place on the record:

THE COURT: . . . Dat, is that your desire, to represent yourself in this matter?

. . . DAT: Your Honor, I do not waive my right to be represented by counsel, but I had an issue with appointed counsel not representing arguments in pretrial. I've got the motions that I wanted made prior to trial, and those weren't represented in terms of arguments and to expand the record, present evidence. The [c]ourt has — has not had an opportunity to review my evidence.

And I was not prepared, I'm not ready for trial yet, but because counsel has refused to do so, I'm willing to represent myself during the pretrial stage in order to have everything; but admitting I'm prepared for trial, I cannot represent myself at trial, no, sir. I'm not waiving my right to be represented by counsel, but I'm out of options, Your Honor.

At that point, the court explained that a hybrid system of representation was not constitutionally mandated and asked whether Dat was waiving his right to counsel. The colloquy continued:

THE COURT: Well, my experience in criminal law, that it's either one or the other, that we can't have two

steering wheels on the car. And so you're either — you know, either it's a matter of you're represented by counsel or not. I don't believe a hybrid system of you represent yourself on some things and by counsel on others is constitutionally mandated.

. . . DAT: All right. Then if it pleases the [c]ourt, I would like to represent myself moving forward. Thank you.

THE COURT: Are you going to be ready for trial on [the previously scheduled date]?

. . . DAT: No, I will not, but I have pending pretrial motions. . . .

THE COURT: Well, did anyone make you — make any threats — well, just to be clear, you're willing to waive your right to an attorney in this matter?

. . . DAT: Yes, Your Honor, I'm waiving my right.

THE COURT: Did anyone make any threats or promises to you to get you to waive your right to an attorney?

. . . DAT: Um, the decision was made in duress, Your Honor.

THE COURT: Excuse me?

. . . DAT: I said the decision was made in duress, Your Honor.

THE COURT: Well, then I'm not going to accept the voluntary waiver of counsel. So I overrule your motion to represent yourself.

Thus, the court overruled Dat's motion, based on his statements that his decision to waive counsel was made "in duress."

After the court's ruling, defense counsel asked whether Dat understood the court's reasoning. He said, "[D]o you understand that the reason the [c]ourt didn't allow you to — to go forward with that is because you would have to make your decision freely, knowingly, intelligently and voluntarily, and you kind of said the opposite and said you were making your decision under duress?" Dat responded, "Yes, because I — I have no choice." Dat reiterated that he was "not prepared for trial" and that he wished to make an "objection." The court

heard Dat's objection, which is not at issue on appeal, and overruled it.

At the close of the hearing, Dat moved to continue the matter and commented that he was "representing [him]self." The court directed Dat to address the motion to continue with his counsel and repeated that it overruled his motion for self-representation.

### (b) Standard of Review

[2] In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.[5]

The State suggests that we should also apply a two-part standard of review to determine whether a defendant has validly asserted his or her right to self-representation, where the historical facts are reviewed for clear error and the ultimate question of law is reviewed de novo. Because it would make no difference here, we decline to do so.

### (c) Discussion

Dat's primary argument is that the court violated his constitutional right to self-representation when it refused to accept his attempted waiver of counsel without making any further inquiry. He maintains that his waiver was voluntary, even though he stated that he made the decision to waive counsel "in duress." The State responds that the court did not clearly err in finding the waiver to be involuntary, because "'a waiver made under duress is by definition not a voluntary waiver of a fundamental constitutional right'"[6] and because Dat never made a clear and unequivocal request to represent himself.

[3-5] We review the applicable principles. A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth

---

[5] *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021).

[6] Brief for appellee at 20 (quoting *U.S. v. Allison*, 264 Fed. Appx. 450 (5th Cir. 2008)).

Amendment and Neb. Const. art. I, § 11.[7] In order to waive the constitutional right to counsel, the waiver must be made knowingly, voluntarily, and intelligently.[8] As the State correctly points out, the right to self-representation is triggered only when a defendant clearly and unequivocally requests self-representation.[9]

There are a few problems with Dat's argument. For example, the record shows that he informed the court, twice, that his decision to waive counsel was made "in duress," and he did not back away from that assertion when defense counsel asked him for clarification. During the hearing, defense counsel stated that Dat was "very intelligent." We believe that Dat's statements cast serious doubt on any notion that his attempted waiver was voluntary. Moreover, Dat cites no authority to support his contention that a more in-depth inquiry was constitutionally mandated in this situation.

Additionally, Dat's argument overlooks other statements that he made to the court. At various points during the colloquy, Dat stated that he "d[id] not waive [his] right to be represented by counsel," that he was "willing to represent [him]self during the pretrial stage," that he "would like to represent [him]self moving forward," and that he was "representing [him]self." Based on Dat's conflicting statements about waiving his right to counsel and his equivocal request for self-representation, we find no error, clear or otherwise, in refusing to accept the attempted waiver of counsel without further inquiry.

Dat also argues that he was competent to represent himself, because he did not engage in "obstructional tactics."[10] This argument is unavailing. We do not read the court's decision to rest on a determination of lack of competency.

---

[7] *State v. Ely*, 306 Neb. 461, 945 N.W.2d 492 (2020).

[8] *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019).

[9] *State v. Ely, supra* note 7. See *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[10] Brief for appellant at 16.

On this record, we see no error in the court's determination that Dat's waiver of counsel was involuntary. Therefore, the court did not err in overruling his motion for self-representation.

## 2. Sufficiency of Evidence of Bodily Injury

Focusing on one element of the crime, Dat asserts that the evidence presented at trial was insufficient to support his conviction for assault by a confined person. Dat contends that the State failed to meet its burden to prove that he caused "bodily injury" to another person.[11]

### (a) Additional Background

At trial, the State offered the testimony of a corrections officer, Chad Conklin, who was present at the scene of the altercation between Dat and Tilian. The altercation was also captured on a surveillance video recording that the court received into evidence.

Pursuant to our standard, these facts are recited in the light most favorable to the State. Conklin was preparing to serve a lunch meal to the inmates, when Dat instigated a fight with Tilian. The video recording showed Tilian exiting his cell and turning left to walk toward the lunch area. Shortly thereafter, Dat exited a nearby cell and approached Tilian from behind. Dat punched Tilian in the back of the head, and the two engaged in a scuffle. Dat repeatedly punched Tilian, and at least one of Dat's punches "caus[ed Tilian's] head to go back." The fight ended when Dat threw Tilian to the ground.

Following the incident, Conklin placed Dat and Tilian in handcuffs, and they were separately escorted to an area off camera.

As part of his testimony, Conklin described his brief interaction with Tilian before Tilian was escorted out by another officer. Conklin did not recall any visible bruising, scratches, or blood on Tilian, and he did not know whether Tilian received subsequent medical treatment. Conklin testified that

---

[11] See § 28-932(1)(b).

he "knew [Tilian] wore glasses, but his glasses were not on him," and that Tilian looked "shaken up." He described Tilian as having a "stunned look on his face." Conklin represented that Tilian did not make any statements to him regarding "how [Tilian] felt or his condition" during their brief interaction.

The State also adduced testimony from Conklin regarding "something of interest" found after the incident. Conklin testified that there was a "chunk of hair, like, almost like a small dreadlock type laying on the ground" near where the altercation took place. He stated it was discovered "probably a half-hour" after the incident. The State did not offer the "chunk of hair" or any photographs of it as evidence. But the State did adduce confirmation from Conklin that Tilian "ha[d] dreadlocks" at that time and Dat did not. When asked whether the hair color matched Tilian's, Conklin responded, "Yes."

Before deliberations, the court instructed the jury on the elements of the offense and the definition of bodily injury. It also tendered the standard Nebraska Jury Instructions on, among other things, the State's burden to prove the elements beyond a reasonable doubt, as well as direct and circumstantial evidence. Because Dat does not assign error to the jury instructions, we mention them only to note that they were provided.

### (b) Standard of Review

[6] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[12]

---

[12] *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024).

(c) Discussion

Dat argues that the evidence was insufficient, asserting that the "only evidence" of bodily injury was Conklin's testimony, in response to a question posed by the State, that Tilian seemed "'shooken up'"[13] by the incident. He focuses on the fact that Conklin did not see bruising, scratches, or blood on Tilian. He also points out that there was no evidence that Tilian had difficulty walking, complained of pain, or received medical attention. These arguments lack merit.

A statutory definition controls. "Bodily injury" is defined under the Nebraska Criminal Code[14] as "physical pain, illness, or any impairment of physical condition."[15] The basic assault statutes[16] and specialized assault statutes,[17] including the statute applicable here,[18] all depend upon the same definition of bodily injury.[19] Neither that definition, nor the language defining Dat's offense,[20] requires a particular degree of bodily injury.[21]

[7] Our case law follows that same path. "We have never required that an assault culminate in visible markings in order to be labeled as such."[22] We now explicitly hold that physical manifestation of an injury is not required to meet the definition of bodily injury in § 28-109(4). The Nebraska Court of

---

[13] Brief for appellant at 11.

[14] See Neb. Rev. Stat. § 28-101 (Cum. Supp. 2024) (identifying sections of Nebraska Criminal Code).

[15] Neb. Rev. Stat. § 28-109(4) (Reissue 2016).

[16] See Neb. Rev. Stat. §§ 28-308 to 28-310 (Reissue 2016).

[17] See Neb. Rev. Stat. §§ 28-929 to 28-934 (Reissue 2016 & Cum. Supp. 2024).

[18] See § 28-932.

[19] See §§ 28-101 and 28-109(4).

[20] See § 28-932(1).

[21] See, also, *State v. Goodon*, 219 Neb. 186, 361 N.W.2d 537 (1985).

[22] *State v. Green*, 240 Neb. 639, 641, 483 N.W.2d 748, 750 (1992).

Appeals previously reached virtually the same conclusion in an unpublished decision.[23]

[8] Also, there are certain circumstances where bodily injury can be inferred. In a prior case,[24] we reached that conclusion where a defendant intentionally punched another person in the face, even though the victim testified that it did not cause him any pain. This flows from a basic principle: A fact may be proved by direct evidence alone, by circumstantial evidence alone, or by a combination of the two.[25] Thus, we reject Dat's implicit argument that Tilian's direct testimony was required to prove bodily injury.

Applying these principles, we conclude that the State presented sufficient direct and circumstantial evidence to support a finding that Dat caused physical pain to Tilian. The surveillance video recording showed, and Conklin testified, that Dat approached Tilian from behind and punched him in the back of the head. Dat continued punching Tilian and then threw him to the ground. And, as Conklin described, the video recording showed that at least one of the punches "caus[ed] Tilian's] head to go back." Tilian's eyeglasses were knocked off of his face. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Dat caused bodily injury to Tilian.

Dat also presents several arguments challenging the testimony regarding the "chunk of hair." We need not address them. We have already concluded that there was sufficient evidence of bodily injury without the challenged testimony, and in any event, Dat did not object to it below.[26]

---

[23] See *State v. Galvan*, No. A-20-418, 2021 WL 560755 (Neb. App. Feb. 16, 2021) (selected for posting to court website).

[24] See *State v. Waltrip*, 240 Neb. 888, 484 N.W.2d 831 (1992).

[25] *State v. Brown*, 317 Neb. 273, 9 N.W.3d 871 (2024).

[26] See *State v. Rush*, 317 Neb. 622, 662, 11 N.W.3d 394, 428 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787 ("[f]ailure to make a timely objection waives the right to assert prejudicial error on appeal").

### 3. Quashing of Subpoena
### for Untimely Service

We now turn to the novel issue. Dat argues that the district court erred in quashing a witness subpoena at trial, finding he failed to show good cause to shorten the statutory period for service. Further, he asserts that trial counsel was ineffective in failing to serve the subpoena before the statutory deadline.

### (a) Subpoena Statutes

Two statutes are particularly relevant. The first one—from Nebraska's statutes governing criminal procedure—provides, in part, that "[t]he statutes governing subpoenas in civil actions and proceedings shall also govern subpoenas in traffic and criminal cases . . . ."[27]

The pertinent civil procedure statute, which is central to the parties' arguments, specifies the deadline for service of a subpoena before a trial. The current version of § 25-1226(2) states in full:

> A subpoena for a trial must be served at least two days before the day on which the person is commanded to appear and testify. A court may shorten the period for service for good cause shown. In determining whether good cause exists, a court may consider all relevant circumstances, including, but not limited to, the need for the testimony, the burden on the person, and the reason why the person was not subpoenaed earlier.

This statutory period for service is relatively new,[28] and this case presents our first opportunity to consider it. Prior to the 2017 amendment, there was no time limit imposed regarding a subpoena issued for personal service.[29] We think it is helpful to summarize the new requirement.

[9,10] Section 25-1226(2) now requires a subpoena for a trial to be served at least 2 days before the person is ordered

---

[27] Neb. Rev. Stat. § 29-1901(1) (Cum. Supp. 2024).

[28] See 2017 Neb. Laws, L.B. 509, § 3.

[29] See § 25-1226 (Reissue 2016).

to appear and testify, unless a party shows good cause to shorten the period for service. And "good cause," for purposes of § 25-1226(2), refers to "all relevant circumstances, including, but not limited to, the need for the testimony, the burden on the person, and the reason why the person was not subpoenaed earlier."

For completeness, we note that neither party raises any issue of interpretation or constitutionality of the statute at issue. The parties' arguments concern the court's application of § 25-1226(2) to conclude that Dat failed to show good cause.

## (b) Additional Background

This is our first occasion to consider the revised version of § 25-1226. For that reason, we expand the additional background.

After the State rested its case, Dat's counsel filed a praecipe for subpoena for a different corrections officer, Darla Sparr, to testify at trial. The praecipe was filed at 11:54 a.m. and requested that Sparr be ordered to testify at 1:30 p.m. that afternoon.

The State moved to quash the subpoena, asserting that Dat failed to comply with the statutory period for service in § 25-1226(2). The State argued that Sparr was named in discovery and in the information—which listed "DARLA E SPARR" as a witness—and that she was a person known to the defense. It also argued that Sparr was at work at the time and that requiring her to testify with such little notice was inappropriate and unfair to her.

Dat's counsel urged the court to shorten the period for service for good cause. He argued that the burden on Sparr "[wa]sn't that great to travel five minutes from the [c]orrections facility." He also asserted that his cocounsel had already spoken with Sparr on the telephone and that Sparr "did not indicate that it would be any problem for her to appear and pick up [the] subpoena." Counsel further argued that the defense "had no idea" what evidence the State would present

at trial. Finally, counsel added that Sparr's last name was listed as "Dowty" in a report, so "it took us until yesterday, in fact, to put together that was, in fact, the same person."

The State responded that there was no explanation for why the defense failed to seek a subpoena for Sparr—under either last name—until the day of trial, roughly an hour before she would be ordered to appear and testify. The State also disputed the contention that the defense had no idea what evidence would be at issue at trial. At that point, defense counsel argued:

> However, I would note that we did not know how . . . Conklin was going to be testifying specifically to the medical attention received by . . . Tilian and his — the lack of their knowledge thereof, where . . . Sparr could testify that she was the one that escorted [Tilian] out of the facility, that he did not see anyone and where he went after that.

The State countered that the defense failed to take steps during discovery to ascertain what information the two officers possessed.

The court sustained the State's motion to quash the subpoena as untimely, agreeing with the State that Dat failed to show good cause to shorten the period for service. Defense counsel then moved for a continuance to "properly" serve the subpoena, which the court overruled. No error is assigned to that ruling.

### (c) Standard of Review

Prior to the 2017 amendment of § 25-1226, a ministerial duty was imposed on the court clerk to issue a subpoena with no deadline being provided for seeking issuance.[30] Since that time, we have not had the opportunity to settle the standard of review for a ruling regarding the deadline for service of a subpoena before a trial. The parties seem to agree that the question is whether the trial court abused its discretion. We agree.

---

[30] See Neb. Rev. Stat. § 25-1223 (Reissue 2016).

[11,12] We hold that a trial court's determination regarding the period for service of a subpoena for a trial under § 25-1226(2) will be upheld on appeal in the absence of an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[31]

[13,14] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[32] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[33]

### (d) Discussion

### (i) Failure to Show Good Cause

Dat contends that the court erred in failing to find there was good cause to shorten the period for service upon Sparr. He again attacks the sufficiency of the evidence showing bodily injury, arguing the defense was "forced to call an impeachment witness for the purpose of contradicting the notion that Ti[l]ian reported pain."[34] He claims that the burden of proof was improperly shifted to the defense. He also argues, mistakenly, that the information did not name Sparr as a witness. He maintains that the burden on Sparr to testify was minimal and that there would have been minimal, if any, delay in the trial, had the court permitted Dat to serve the subpoena. These arguments fail.

---

[31] *State v. Rivera-Meister, ante* p. 164, 14 N.W.3d 1 (2024).

[32] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[33] *State v. Briggs*, 317 Neb. 296, 9 N.W.3d 632 (2024).

[34] Brief for appellant at 12.

We agree with the State that the court did not abuse its discretion in quashing the subpoena for lack of timely service. In rejecting Dat's good cause argument, the court considered the relevant factors. Regarding the need for the testimony, the court noted that there had not been "much of a showing" of what the testimony would be or that it could not have been adduced from Conklin. And while the burden on Sparr may have been minimal, the court also considered the burden on her employer. Moreover, it found that there was no valid reason why Sparr was not subpoenaed earlier. We see nothing in the court's reasoning that was untenable or unreasonable, and its action was not clearly against justice or conscience, reason, and evidence.

### (ii) Ineffective Assistance of Counsel

[15] Through different counsel, Dat claims that his trial counsel provided ineffective assistance in failing to timely serve the subpoena upon Sparr. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[35]

[16-18] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[36] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[37] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary

---

[35] *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

[36] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[37] *State v. Haas, supra* note 35.

training and skill in criminal law.[38] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[39]

[19] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[40]

[20] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[41]

On appeal, Dat faults trial counsel's failure to serve the subpoena upon Sparr before the statutory deadline. He argues that he was prejudiced by Sparr's absence from trial, because she would have testified to Tilian's "statements or lack thereof and her first-hand impressions of whether Tilian expressed that he was in pain or had been injured."[42]

Assuming without deciding that trial counsel's performance was deficient, we conclude that as a matter of law, Dat will not be able to establish prejudice. We have already concluded that the evidence was sufficient to support Dat's conviction, and the record establishes that Sparr's testimony would not

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024).

[42] Brief for appellant at 13.

have changed the outcome of trial. On this record, there is no reasonable probability that but for the assumedly deficient performance, the result of the proceeding would have been different.

### 4. State's Plain Error Argument

[21] In addition to Dat's assignments, the State argues that the court plainly erred in applying credit for time served to Dat's sentence. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[43]

Section 28-932(2), provides, in part, that a sentence for assault by a confined person "shall not include any credit for time spent in custody prior to sentencing unless the time in custody is *solely related to the offense for which the sentence is being imposed under this section*." (Emphasis supplied.) The State asserts that Dat's time in custody before sentencing was not "'solely related'"[44] to the instant offense, and therefore, Dat should not have received credit for that time.

But the appellate record does not establish the time period or periods from which the specific jail credit was derived. The parties waived a presentence report. Although a "criminal records investigation" was apparently ordered by the trial court, it is not included in the record presented here. The record does show that Dat was already in custody when he committed the instant offense—indeed, his confinement was an element of the crime.[45] But it does not show whether Dat remained in such other custody for all or part of the time between the date of the instant offense (February 22, 2023) and the date of sentencing thereon (November 9, 2023)—a period of 260 days. From this record, we cannot determine how the court

---

[43] *State v. Rush, supra* note 26.

[44] Brief for appellee at 21 (quoting § 28-932(2)).

[45] See § 28-932(1)(a)(i).

calculated the credit of 228 days. In the absence of a record establishing that Dat remained in such other custody, we cannot find an error plainly evident from the record—an essential predicate of plain error.[46]

## VI. CONCLUSION

As set forth in the analysis, we conclude the following:

- Physical manifestation of an injury is not required to meet the definition of bodily injury in § 28-109(4).
- Relying upon the principle that a fact may be proved by direct evidence alone, by circumstantial evidence alone, or by a combination of the two, we reject Dat's implicit argument that Tilian's direct testimony was necessary to establish that he suffered bodily injury.
- The Legislature has established a deadline for personal service of a subpoena before trial, which a trial court may shorten for good cause shown.
- A trial court's decision whether to shorten the time for service of a subpoena will be reviewed for an abuse of discretion.

Dat's assignments of error lack merit, including his assignment of ineffective assistance of trial counsel. The record fails to establish plain error in sentencing. The judgment of the district court is affirmed.

Affirmed.

---

[46] See, also, *State v. Rivera-Meister, supra* note 31, *ante* p. 176, 14 N.W.3d at 9-10 ("[w]hen a trial court gives a defendant more or less credit for time served than he or she is entitled to, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit *as verified objectively by the record*" (emphasis supplied)).