Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/02/2020 09:09 AM CDT

State of Nebraska, appellee, v.
Nicholas J. Ely, appellant.
___ N.W.2d ___

Filed July 10, 2020.    No. S-19-850.

1. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.
2. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion.
3. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's factual findings unless they are clearly erroneous.
4. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.
5. **Effectiveness of Counsel: Proof.** To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

6. **Trial: Constitutional Law: Testimony.** A defendant has a fundamental constitutional right to testify.
7. **Trial: Attorney and Client: Testimony.** Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.
8. **Constitutional Law: Right to Counsel: Waiver.** A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth Amendment and Neb. Const. art. I, § 11.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Brian S. Munnelly for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Papik, J.

Nicholas J. Ely appeals from an order denying him post-conviction relief. The district court determined, after holding an evidentiary hearing, that there was no merit to Ely's claims that his counsel was ineffective at the trial court level in failing to advise him of his right to testify and ineffective on direct appeal in failing to argue that his right to self-representation was violated at trial. We find no reversible error and thus affirm.

## BACKGROUND

*Trial and Direct Appeal.*

Ely was tried for his role in an attempted robbery in which the target was killed. The details that led to the charges and trial can be found in our opinion on Ely's direct appeal. See *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

Ely's trial was scheduled to commence on October 1, 2012. On August 21, Ely filed a motion styled as "Motion to Dismiss Current Counsel and Appoint Myself Pro Se." In it, he asserted that the "issues involved in this case are complex and beyond the scope of [his] legal knowledge." He then listed various complaints regarding his attorneys and the amount of time he had been able to review discovery produced in his case. He asked the court to "appoint" him as his own counsel, but also asked that he "have counsel appointed to me for help/advisory for when I have questions [about] my own counsel." On the same day, Ely filed a motion to continue the trial. In the motion to continue, he referred to his motion to dismiss his counsel and represent himself, and he claimed that he needed more time to prepare for trial.

On August 28, 2012, the district court held a hearing on Ely's motions. When asked about his motion to dismiss his counsel and represent himself, Ely said that he did not feel he had had enough time to prepare for trial and that he believed if he represented himself, he would be able to work on the case more. Ely indicated that he wished to spend more time reviewing discovery in his case, but that he did not believe there was enough time remaining prior to trial for him to do so. "So," as he put it, "I feel like I need to go pro se and to get a continuance."

After Ely's counsel responded, the district court said, "I don't see any benefit to you proceeding pro se . . . . [T]hese are serious charges. And I still think you need the advice of counsel. So I'm going to deny your motion."

The district court then heard argument on Ely's motion to continue. In support of this motion, Ely again referred to his motion to dismiss his counsel. He said, "I feel I'm not ready to go to trial in 30 days. That's why I'm in here putting in a motion to dismiss my counsel." The district court denied the motion to continue.

The week before trial was to commence, Ely filed another motion, styled as "Motion to Dismiss Counsel." In this motion,

he asked the district court to dismiss his current counsel and reappoint new counsel. He listed numerous reasons why he was not satisfied with his current counsel, but made no mention of desiring to represent himself. On the same day, Ely filed another motion to continue, in which he referred to his recently filed motion to dismiss counsel and stated that his "new lawyer needs time to go over [d]iscovery and put in motions." The district court denied both motions.

Trial commenced as scheduled, with Ely represented by counsel. Ely did not testify in his own defense.

Ely was convicted of first degree murder on a felony murder theory and use of a deadly weapon to commit a felony. He was sentenced to life in prison on the murder conviction and to a consecutive sentence of 5 to 5 years' imprisonment on the use of a deadly weapon conviction. We affirmed his convictions on direct appeal. *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

*Initial Postconviction Appeal.*

After his convictions were affirmed, Ely filed multiple motions for postconviction relief in which he alleged numerous claims of ineffective assistance of trial and appellate counsel, as well as several claims of district court error. The district court initially denied Ely's motions without holding an evidentiary hearing. Ely appealed, raising 29 different assignments of error.

While we found that the district court correctly denied Ely relief without an evidentiary hearing on most of the claims asserted, we found that he was entitled to an evidentiary hearing on two of his claims: (1) that his trial counsel was ineffective in failing to advise him of his right to testify and (2) that his appellate counsel was ineffective in failing to argue that his right to self-representation was violated at trial. Accordingly, we reversed, and remanded, in part, with directions to the district court to hold an evidentiary hearing on those claims. We also directed the district court to grant Ely's motion for

appointment of counsel. See *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

*Postconviction Proceedings*
*on Remand.*

The district court held an evidentiary hearing following remand. At the evidentiary hearing, the district court received depositions of both Ely and an attorney who served as Ely's counsel at trial and on appeal. After the evidentiary hearing, Ely successfully moved to reopen the record to introduce a motion he filed asking to dismiss his appellate counsel and appoint new counsel. Additional details regarding the evidence introduced at the evidentiary hearing are discussed in the analysis section below.

Following the evidentiary hearing, the district court found Ely was not entitled to relief on either of his two remaining claims. With respect to Ely's claim that his counsel was ineffective in failing to advise him of his right to testify, the district court found that Ely understood he had a right to testify, that his counsel advised him not to do so, and that this advice was reasonable. The district court also found that Ely's counsel did not render ineffective assistance by not arguing on appeal that Ely's right to self-representation was violated at trial. The district court reasoned that if that issue had been raised on direct appeal, it would not have been successful, and that therefore, counsel was not ineffective in failing to raise it.

Ely appeals.

## ASSIGNMENTS OF ERROR

Ely assigns two errors on appeal. He claims that the district court erred (1) in denying relief on his claim that trial counsel was ineffective in failing to advise him of his right to testify and (2) in denying relief on his claim that his appellate counsel was ineffective in failing to assert on appeal that his right to self-representation was violated at trial.

## STANDARD OF REVIEW

[1,2] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Huston*, 302 Neb. 202, 922 N.W.2d 723 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *Huston, supra*.

[3] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *Id.* An appellate court upholds the trial court's factual findings unless they are clearly erroneous. *Id.*

## ANALYSIS

*Ineffective Assistance of
Counsel Standards.*

Both of Ely's assignments of error pertain to alleged ineffective assistance of counsel. We briefly review the legal standards governing such claims before turning to Ely's specific arguments.

[4,5] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Privett*, 303 Neb. 404, 929 N.W.2d 505 (2019). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding

would have been different. *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020).

*Right to Testify.*

[6,7] We now turn to Ely's argument that the district court erred by rejecting Ely's claim that his trial counsel ineffectively failed to advise him of his right to testify. Here, Ely correctly points out that a defendant has a fundamental constitutional right to testify. See *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). Further, he correctly observes that we have previously stated defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* In this case, however, we do not believe the district court erred by concluding that Ely's trial counsel met this responsibility and thus did not perform deficiently.

Although Ely testified in his deposition that he was not advised and did not know he had a right to testify, his counsel testified that this was "absolutely incorrect" and was a "bogus statement." She testified that when she met with Ely after he decided he wanted to go to trial, "one of the first things [he] said to me was, I can't take the stand because I have seven or eight felonies." She testified that she then would have had a conversation with Ely on the risks of testifying as a convicted felon. She additionally testified that Ely was the only person who made the decision not to testify and that no one talked him out of it.

The district court resolved the conflicts between Ely's testimony and that of his counsel and determined that Ely was aware of his right to testify, that his counsel provided advice regarding his testifying, and that Ely made the decision not to do so. The task of resolving such conflicting testimony is within the province of the district court. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). We can disturb its factual findings only if they are clearly erroneous. See

*id.* We find no clear error here and thus see no basis to disturb the district court's conclusion that Ely's counsel did not ineffectively fail to advise him of his right to testify.

*Self-Representation.*

This leaves Ely's argument that he received ineffective assistance of counsel because his counsel failed to argue on direct appeal that his rights to self-representation were violated at trial. Ely claims that if his counsel had raised this issue on appeal, reversal would have been required. He contends that under the U.S. and Nebraska Constitutions, he had a right to represent himself and the district court could not preclude him from doing so based on the fact he faced serious charges or based on its belief that it was in his best interests to be represented by counsel. He also emphasizes that the denial of the right to self-representation has been held to be structural error, not subject to harmless error review. And, according to Ely, if raising this issue would have resulted in his obtaining a new trial, his counsel was deficient for not raising it.

[8] Much of what Ely contends regarding the right to self-representation is true. He is correct that a criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth Amendment and Neb. Const. art. I, § 11. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). He also rightly points out that while the waiver must be made knowingly, voluntarily, and intelligently, it need not be prudent. See *id.* And we have recognized that the denial of the right to self-representation is not subject to harmless error review. See *id.* Ely says nothing, however, about another crucial aspect of the right to self-representation—the requirement that any assertion of the right be made clearly and unequivocally.

In *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the case in which the U.S. Supreme Court recognized a defendant's constitutional right to self-representation at trial, it noted that the trial court had

forced the defendant in that case to accept representation from his appointed attorney after the defendant "clearly and unequivocally" communicated his desire to represent himself. Courts have thereafter uniformly held that the right to self-representation is triggered only when the defendant clearly and unequivocally requests self-representation. See, e.g., *Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994), quoting *Faretta, supra* ("[t]he right to self-representation does not attach until it is asserted 'clearly and unequivocally'"). See, also, 3 Wayne R. LaFave et al., Criminal Procedure § 11.5(d) (4th ed. 2015) (collecting cases).

The requirement that a request for self-representation be clear and unequivocal has been recognized to serve multiple purposes. In one sense, it protects criminal defendants and their right to counsel. As one court put it, the requirement

> acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation. . . . Because a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself.

*Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) (citation omitted).

Not only does the clear and unequivocal requirement benefit criminal defendants, it also protects the criminal justice system as a whole. The need for this protection arises out of the fact that the right to counsel and the right to self-representation are "mutually exclusive entitlements." *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992). See, also, *U.S. v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017) (stating that right to self-representation "lies in tension with the Sixth Amendment right to counsel"). Left unchecked, the conflicting nature of these rights could be abused. Defendants might waver between requests for counsel and self-representation or make requests that are unclear as to their desire for representation

and thereby manufacture an argument for appellate reversal no matter how the trial court rules. See, e.g., *Simpson*, 845 F.3d at 1047 ("[w]ithout a clear and unequivocal request, the [trial] court would face a dilemma, for an equivocal demand creates a potential ground for reversal however the trial court rules"); *Cross v. U.S.*, 893 F.2d 1287, 1290 (11th Cir. 1990) ("[i]n recognition of . . . the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself"). The clear and unequivocal requirement "resolves this dilemma by forcing the defendant to make an explicit choice." *Adams*, 875 F.2d at 1444. If no such choice is made, the defendant is presumed to have invoked the right to counsel and not the right to self-representation. *Id.*

We discuss the clear and unequivocal requirement at length here because we do not believe Ely clearly and unequivocally asserted that he wished to represent himself. To be sure, Ely's motion filed August 21, 2012, included a statement that he wished to represent himself, a statement he repeated at the hearing on that motion. Viewed in context, however, we do not believe these statements constitute an unequivocal assertion that Ely wished to waive his right to counsel and represent himself at trial. We believe this is the case for multiple reasons we will explain below.

First, we believe Ely's request to represent himself could reasonably be understood as expressing a desire to represent himself *only if* the court also continued his trial. Several facts lead us to this conclusion. Ely filed the motion in which he asked to represent himself on the same day he filed a motion to continue the trial date. The motion to continue referred to the motion asking for self-representation as a reason for a continuance. Further, at the hearing on the motions, the primary reason Ely identified for wanting to represent himself was his desire to have more time to work on his case. Because of

his belief that he did not have enough time before trial, Ely said he felt he "need[ed] to go pro se and to get a continuance." Later in the hearing, Ely reiterated that he was seeking to dismiss his counsel because he felt he was not ready to go to trial as scheduled. Finally, Ely did not request to represent himself again after the district court denied the motion for a continuance of the October 1, 2012, trial date. Given the foregoing, we believe it is, at the very least, reasonable to understand Ely's request as a request to represent himself only if the trial date was also continued and thus not an unequivocal assertion of his right to self-representation.

We find support for our determination that Ely did not clearly and unequivocally assert the right to self-representation in several federal court decisions. Because its facts are so similar to this case, we believe *U.S. v. Simpson*, 845 F.3d 1039 (10th Cir. 2017), bears mention first. In that case, the defendant made two motions on the same day, one to represent himself and the other for a continuance of the trial. As the 10th Circuit described the motions, "[r]ead together, [they] stated that [the defendant] wanted to obtain more time for trial and to represent himself at the eventual trial." *Id.* at 1047. The trial court denied both motions, and the defendant appealed. The 10th Circuit explained that the defendant's motions could be understood as requesting self-representation even if the motion for continuance was denied, but that they could also be understood as a request for self-representation only if the defendant obtained additional time. Because the defendant never made clear that he wished to represent himself even if the continuance was denied (and it was), the court held that the defendant had not clearly and unequivocally asserted a right to self-representation. Like the defendant in *Simpson*, Ely asked to represent himself, but made the request in conjunction with an unsuccessful request for continuance of trial and did not make clear that he wished to represent himself if he did not obtain a continuance.

Other recent federal decisions have found a defendant did not clearly and unequivocally request self-representation for reasons similar to those identified in *Simpson*. In *U.S. v. Vanga*, 717 Fed. Appx. 726 (9th Cir. 2018), the U.S. Court of Appeals for the Ninth Circuit held that conditions a defendant placed on his self-representation request, including obtaining a continuance, rendered his request equivocal. In *U.S. v. Edwards*, 535 Fed. Appx. 285 (4th Cir. 2013), the U.S. Court of Appeals for the Fourth Circuit held that a defendant did not clearly and unequivocally assert the right to self-representation. In *Edwards*, the defendant informed the court that he was "'reluctantly'" asking the court to represent himself and that he "'just fe[lt] like [he had] to represent [him]self,'" 535 Fed. Appx. at 287 (emphasis omitted), expressions that are similar to Ely's statement that in light of his belief that he needed more time to prepare for trial, "I feel like I need to go pro se and to get a continuance."

Alternatively, we believe Ely did not clearly and unequivocally assert that he wished to represent himself for another reason: It is not clear that Ely wished to represent himself even if the district court did not appoint counsel to assist him in some fashion.

The Sixth Amendment has been interpreted to confer a right to counsel and a right to self-representation, but there is no constitutional right to "hybrid" representation, in which the defendant both acts as his or her own counsel and is represented by an attorney. See *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); *U.S. v. Callwood*, 66 F.3d 1110 (10th Cir. 1995). While a court has discretion to appoint standby counsel to assist a defendant, there is no constitutional right to such an arrangement. See *U.S. v. Webster*, 84 F.3d 1056 (8th Cir. 1996).

Because there is no constitutional right to hybrid representation, some courts have held that defendants do not clearly and unequivocally assert the right to self-representation when requests to serve as their own counsel are accompanied by

a request to have appointed counsel serve in an advisory or standby capacity. In *U.S. v. Kienenberger*, 13 F.3d 1354 (9th Cir. 1994), the U.S. Court of Appeals for the Ninth Circuit held that a defendant did not clearly and unequivocally assert a right to self-representation, because when he asked to serve as his own counsel, he also asked that advisory or standby counsel be appointed to assist on procedural matters. New York's highest appellate court recently reached the same conclusion. It reasoned that because the defendant had consistently requested standby counsel—to which he had no constitutional right—he had not unequivocally asked to proceed without counsel. *People v. Silburn*, 31 N.Y.3d 144, 98 N.E.3d 696, 74 N.Y.S.3d 781 (2018).

In contrast to *Kienenberger* and *Silburn*, some courts have held that it is possible for a defendant to request standby counsel and nevertheless unequivocally assert the right to self-representation. See, e.g., *U.S. v. Baker*, 84 F.3d 1263 (10th Cir. 1996); *People v. Hicks*, 259 Mich. App. 518, 675 N.W.2d 599 (2003). But even assuming that is a possibility, we do not believe Ely did so here.

As we have noted, Ely's motion requesting that he be allowed to represent himself also requested that counsel be appointed to assist him when he had questions. On its face then, Ely's motion sought some type of hybrid arrangement in which he served as his own counsel but appointed counsel remained to assist him. Ely did not make clear either in his motion or at the hearing that even if his request for such a hybrid arrangement was denied, he still wanted to waive his right to counsel and represent himself.

Furthermore, in Ely's motion, he admitted that the issues in his case were complex and beyond the scope of his legal knowledge. We recognize that the absence of technical legal knowledge is not, in itself, a valid reason to deny a properly asserted request for self-representation. See, e.g., *Jones v. Norman*, 633 F.3d 661 (8th Cir. 2011) (holding that it was improper to deny defendant's request to represent

himself on grounds that defendant was not familiar with rules of criminal procedure). Here, however, we believe Ely's recognition that he lacked the legal knowledge to effectively represent himself casts considerable doubt on any notion that he actually wanted to represent himself in the absence of counsel to advise him. Where there is doubt as to whether a defendant actually desired to waive his right to counsel and invoke his or her right to self-representation, the request cannot be fairly described as clear and unequivocal.

Because Ely did not clearly and unequivocally assert his right to self-representation, we agree with the district court that any argument on appeal that his right to self-representation was violated stood no chance of success. Because Ely cannot demonstrate the requisite prejudice, his claim that his counsel should have argued on appeal that his right to self-representation was violated at trial was properly rejected.

## CONCLUSION

Because we find that the district court did not err in denying Ely postconviction relief, we affirm.

AFFIRMED.

FREUDENBERG, J., not participating.