IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SMITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEVIN G. SMITH, APPELLANT.

Filed May 27, 2025.    No. A-24-386.

Appeal from the District Court for Wayne County: MARK A. JOHNSON, Judge. Affirmed.

Logan J. Hoyt, of Donner Law Offices, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Kevin G. Smith appeals the Wayne County District Court's order that denied his postconviction motion following an evidentiary hearing on his claims that he was denied effective assistance of trial counsel. Because we find no error by the district court, we affirm.

## II. BACKGROUND

In August 2020, the State filed an information charging Smith with five counts: count I, use of a deadly weapon to commit a felony; count II, possession of a deadly weapon by a felon; count III, terroristic threats; count IV, second degree false imprisonment; and count V, third degree domestic assault. Counts I through III also alleged Smith was a habitual criminal.

At a hearing in October 2021, pursuant to a plea agreement, the State filed an amended information dismissing count I and all habitual offender enhancements. In return, Smith agreed to enter guilty pleas to the remaining charges.

- 1 -

Before accepting Smith's plea, the district court affirmed that it had previously informed Smith of his rights and he had no questions regarding them, confirmed Smith understood the plea agreement, and explained the consequences of pleading guilty. Thereafter, Smith entered his pleas, clarifying on the record that he was entering "*Alford* pleas." Smith also affirmed that he was entering his pleas freely and voluntarily and that no threats or promises had been made to induce his pleas other than the terms of the plea agreement.

The State provided the following factual basis for the charges. In July 2020, police responded to Smith's home after Pamela J., made a report that Smith had physically assaulted her mother, Patricia S. During an argument, Smith had struck Patricia several times, pushed her into a bedroom while holding a shotgun in his hand, threatened her in a terrorizing manner, and told her she was not allowed to leave the room. Patricia was unable to leave the room until the next morning. Smith was a convicted felon at the time.

After the State's recitation of facts, Smith stated that he had some disagreements with the factual basis but agreed not to object to it because he was accepting the plea deal and reserved his statements for sentencing. The district court found that there was a factual basis to support Smith's pleas and that his pleas were entered voluntarily, knowingly, and intelligently. After accepting his pleas, the court found him guilty of the remaining charges, ordered a presentence investigation report, and scheduled sentencing.

In December 2021, the district court sentenced Smith to 4 to 6 years' imprisonment on count II, possession of a deadly weapon by a felon, a Class ID felony; 1 to 2 years' imprisonment on count III, terroristic threats, a Class IIIA felony; 1 year's imprisonment on count IV, second degree false imprisonment, a Class I misdemeanor; and 1 year's imprisonment on count V, third degree domestic assault, a Class I misdemeanor. The sentences for counts II through IV were to be served consecutively, and the sentence on count V was to be served concurrent to count III. Smith filed a direct appeal through his trial counsel, in which his sole assignment of error was that the district court had imposed an excessive sentence. This court summarily affirmed. See *State v. Smith*, A-22-006 (May 9, 2022).

Smith filed a pro se motion for postconviction relief in August 2022, alleging his pleas were not freely, intelligently, and voluntarily entered and included numerous claims of ineffective assistance of trial counsel. The district court found Smith was entitled to an evidentiary hearing on his claims and appointed new counsel to represent him on the motion. In January 2024, Smith, through his newly appointed counsel, filed a motion for leave to file an amended verified motion, clarifying his ineffective assistance claims.

In early February 2024, a hearing was held on the amended verified postconviction motion. Smith's amended motion, a certified copy of the original case, communications between Smith and his trial counsel, and depositions of his trial counsel, Pamela, and Patricia, were offered and received into evidence. Smith, his trial counsel, and a forensic pathologist also testified.

The district court entered an order in April 2024, denying Smith's amended verified motion for postconviction relief. It found that Smith entered his pleas freely, intelligently, and voluntarily, and there was no ineffective assistance of counsel. Smith timely appeals.

## III. ASSIGNMENTS OF ERROR

Smith assigns the district court erred in dismissing his amended verified motion for postconviction relief because (1) his pleas were not understandingly and voluntarily made in violation of his right to effective assistance of counsel and (2) his trial counsel was ineffective in failing to (a) properly prepare for trial by neglecting to investigate, interview, and depose various witnesses; (b) object and move to withdraw his pleas when the State breached the plea agreement at sentencing; (c) adequately communicate with and disclose discovery to him; and (d) advise him of his right to petition for further review (PFR) by the Nebraska Supreme Court after we summarily affirmed his direct appeal.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id*.

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *Betancourt-Garcia, supra*.

## V. ANALYSIS

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). The Nebraska Postconviction Act is intended to provide relief in those cases where a miscarriage of justice may have occurred; it is not intended to be a procedure to secure a routine review for any defendant dissatisfied with his or her sentence. *Newman, supra*.

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Ely*, 306 Neb. 461, 945 N.W.2d 492 (2020). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

The likelihood of the defense's success had the defendant insisted on going to trial is relevant to the prejudice analysis. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). It is

relevant to the consideration of whether a rational defendant would have insisted on going to trial. *Id.* The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id.* Self-serving declarations that a defendant would have gone to trial are not enough to warrant a hearing; a defendant must present objective evidence showing a reasonable probability that he or she would have insisted on going to trial. *Id.*

Typically, a motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal, but when, as here, the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. See *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

We first note the district court determined that Smith was not a reliable historian of the facts and that his attorney's version of the events was more credible than Smith's version. Smith asserts this is an erroneous finding because his testimony regarding Patricia's injuries was consistent with the observations of the forensic pathologist. However, the record supports the district court's determination. Smith denied the accuracy of the bill of exceptions from the plea and sentencing hearings, testified he could not remember numerous things, and asserted various facts not supported by the evidence. Furthermore, we give deference to the district court's findings of witness credibility. See *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

1. VOLUNTARINESS OF PLEAS

Smith asserts he pled guilty to the amended charges because his trial counsel threatened to terminate representation, misrepresented the nature of the plea agreement, and wrongly advised him not to proceed to trial because he had no defense to the charge of possession of a firearm by a prohibited person.

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *Jaeger, supra*. Thus, when a defendant pleads guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.* Threats made by trial counsel render a plea involuntary. See *id.*

(a) Alleged Threats

Smith contends that his pleas were the result of trial counsel's threat to terminate representation if he did not accept the State's plea offer. The district court found Smith's trial counsel had not made a threat to terminate representation to coerce Smith into accepting the plea offer from the State. Also, it noted that at the plea hearing Smith denied that any threats, force, threat of force, promises, or inducements were made in exchange for his acceptance of the offer.

Smith's trial counsel testified to the following at the evidentiary hearing:

[State]: Okay. At any time during your representation of Mr. Smith, did you tell him that if he did not take the plea agreement that you would no longer represent him?

[Trial counsel:] No.

[State]: How do you know that you didn't say -- how can you be sure?

[Trial counsel:] Because I would never say that. That's not -- that's not something that I do. It's the client's decision whether to take a plea deal. It's the client's decision whether to go to trial. I have never ever said that to any client ever.

Further, a certified copy of the bill of exceptions from the plea hearing was also offered and admitted into evidence. It contains the following colloquy from the plea hearing:

THE COURT: Has anyone made any threats, used any force or promised you anything in exchange for your pleas of guilty aside from the plea agreement that's been explained to me?

[Smith]: No, Your Honor.

Trial counsel's deposition testimony and Smith's representation to the court at the plea hearing confirm that his pleas were not the product of a threat. The district court did not err in finding that Smith's pleas were not rendered involuntary because of a coercive threat made by trial counsel.

## (b) Alleged Misrepresentation of Plea Agreement

Smith also argues his pleas were involuntary and unintelligent because trial counsel misrepresented the plea agreement. Specifically, Smith alleges trial counsel had informed him the State would remain silent at sentencing. The district court, in dismissing his postconviction motion, found that this claim was contrary to the evidence. We agree.

The record discloses that the following colloquy was had at the plea hearing:

[Trial counsel]: The State has agreed to dismiss Count Number I, that is the possession of a firearm -- or Use of a Firearm to Commit a Felony. Mr. Smith will plead guilty to -- guilty or no contest to the remaining charges. The State will not seek to enhance any of the felonies to habitual offender. There is no agreement as to sentencing at this time, but that's something that we might be able to work out as the PSI comes out.

[State]: Judge, the only change I would state on that is that he pleads guilty to those charges.

. . . .

THE COURT: And although, as [trial counsel] indicated, you might at some point hereafter enter into an agreement with the County Attorney whereby she will be making a recommendation at sentencing, do you understand that I would not be a party to that agreement and that I will be free to sentence you under the full range of possible penalties associated with each of these crimes, sir?

[Smith]: Yes, Your Honor.

This evidence discloses that the plea agreement was discussed on the record, in front of Smith, and it was explicitly stated there was no agreement made concerning sentencing. Moreover, trial counsel's deposition discloses the following:

[Postconviction counsel:] Did the plea agreement you reached with the County Attorney on behalf of [Smith], did that ever include any type of agreement with regarding sentencing?

[Trial counsel:] It did not.

. . . .

[Postconviction counsel:] Okay. But why would [Smith] think that the State was supposed to stand silent?

[Trial counsel:] I have no idea.

[Postconviction counsel:] Did you ever tell him that?

[Trial counsel:] I did not.

[Postconviction counsel:] Did you ever discuss that potentially happening?

[Trial counsel:] No.

Further, the record shows trial counsel provided a letter to Smith regarding two plea offers offered by the State. This letter explained the terms of the two offers and made no mention of any agreement by the State to remain silent at sentencing.

As evidenced by the above, the plea agreement did not require the State to remain silent at sentencing. Thus, Smith's pleas were not rendered involuntary by trial counsel's misrepresentation of the plea agreement.

(c) Alleged Inaccurate Advice

Smith also claims his pleas were the result of trial counsel allegedly incorrectly advising him he had no defense to the charge of possession of a firearm by a felon and thus he should accept the plea rather than be found guilty at trial. Smith asserts this advice was contrary to the law and facts of the case, and trial counsel failed to consider possible defenses. He asserts that he likely would not have been convicted of the charge at trial because the firearm belonged to Patricia, he did not admit to unlawful or illegal possession or control of the firearm, the mere presence of a firearm is not sufficient to show actual or constructive possession, and the only time he exercised "dominion or control" over the firearm occurred when he unloaded the weapon in response to a threat made by Patricia to kill him. The district court found that trial counsel was not ineffective because the greater weight of the evidence showed Smith had possession of the firearm and his relatively minimal sentence was evidence of counsel's "wise" advice to accept the plea offer.

In the letter provided by trial counsel to Smith which explained the plea offers, trial counsel explained the advantages of each plea as compared to proceeding to trial. Counsel pointed out Smith had made incriminating statements to law enforcement regarding the firearm that trial counsel described as "essentially an admission to the Possession of the Firearm Charge," and which could not be kept out because Smith was not in police custody during the time they were made. The letter further stated, "If [the firearm] is in the house and you have access to it, you have possession of it." Thus, counsel recommended Smith accept a plea deal because the State had sufficient evidence to convict him of the offense.

We agree counsel was not ineffective in advising Smith regarding the charge of being a felon in possession of a firearm. A sheriff's report was attached as an exhibit to trial counsel's deposition. It stated that Smith had informed a deputy that the firearm had been kept by the door with ammunition in it, Smith kept extra ammunition in his bedroom, and he usually kept two or three rounds in the firearm to scare off coyotes. At the evidentiary hearing, Smith testified that the gun had been kept inside his home for the past "five, six, seven years" and that he recalled

admitting to law enforcement that he used the shotgun to shoot coyotes or other vermin on his property. Additional evidence included Patricia's deposition testimony that Smith wielded the gun at her during the assault.

As previously stated, when a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty; the likelihood of his success at trial is relevant to the analysis. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). See, also, *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). We find that the likelihood of Smith's success defending against this charge had he gone to trial would be minimal.

A person commits the offense of possession of a deadly weapon by a prohibited person if that person possesses a firearm, a knife, or brass or iron knuckles and has previously been convicted of a felony. Neb. Rev. Stat. § 28-1206(1)(a) (Cum. Supp. 2020). Possession of a firearm may be actual or constructive. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Actual possession is synonymous with physical possession. *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). Constructive possession, however, may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same. *Id*.

Regardless of whether the presence of the firearm and its availability to Smith would be sufficient evidence to find Smith was a felon in possession under a constructive possession theory, the evidence supports that Smith had actual possession of the firearm. Smith testified at the evidentiary hearing that he told a sheriff's deputy that he used the shotgun to shoot coyotes or vermin or other animals on the property. He further agreed that on the date of the incident, the gun was loaded and was accessible to him on his front porch. Patricia reported to law enforcement that Smith wielded the firearm during the altercation. This evidence would support a finding that Smith had actual possession of the firearm.

It is also uncontested that Smith was a felon at the time of his possession. The evidence thus would have been sufficient to show Smith committed the offense of possessing a firearm as a felon. See § 28-1206(1)(a). Accordingly, Smith cannot show that counsel was ineffective or that he was prejudiced by counsel's advice because he would have been unlikely to succeed at trial, and the State had a strong case against him. We also note Smith received great benefit from the plea agreement. It reduced his potential sentence of a mandatory minimum of 30 years' incarceration to only 3 years' mandatory incarceration. See, Neb. Rev. Stat. §§ 29-2221 and 28-106 (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020).

We thus conclude the district court did not err in finding Smith's pleas were entered freely, intelligently, and voluntarily. See *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021).

2. WITNESSES

Smith contends he would have rejected the plea offer and proceeded to trial had trial counsel investigated, interviewed, and deposed various witnesses, including a forensic pathologist, Pamela, and a particular sheriff's deputy.

We note that counsel need not interview every possible witness to have performed proficiently. See *Newman, supra*. A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* A reasonable

strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *Id*. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable. *Id*.

The decision to interview witnesses must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case. *Id*. In every case, trial lawyers could have done something more or something different. *Id*. The issue is only what is constitutionally compelled. *Id*.

An attorney must at a minimum interview potential witnesses and make an independent investigation of the facts and circumstances in the case. *Id*. The results of certain interviews or investigation may indicate that further pursuit likely will be a waste of time. *Id*. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's obligation is to conduct a reasonable inquiry into all plausible defenses. *Newman, supra*.

(a) Forensic Pathologist

Smith contends a forensic pathologist would have been able to scrutinize Patricia's injuries and would have provided testimony at trial that showed Smith did not assault her. We disagree.

Dr. Erin Linde, a forensic pathologist, was consulted by Smith's postconviction counsel. She testified at the evidentiary hearing, and her report was admitted into evidence. The report states that, in Linde's expert opinion, photographs of Patricia's injuries showed bruises caused by blunt force impact, but it was impossible to definitively determine the age or cause of the contusions. Linde also compared the location of the bruises in the photographs to Patricia's description of the incident in her deposition, and determined that the location of the bruise on Patricia's left thigh was inconsistent with her description of being face down on the bed when Smith was hitting her in that area.

Although Smith alleges the report shows Patricia's account of events is inconsistent with her injuries, we note that Patricia admitted in her deposition that she did not know how she was lying and that "it happens really fast." Furthermore, Linde confirmed at the evidentiary hearing that she was not testifying Smith had not assaulted Patricia, only that the photographs and location of the bruises did not match the specific description of the manner in which they occurred. Linde conceded, however, that Patricia also relayed that during the altercation a box fan and chair were knocked over as she was being pushed into the bedroom and that those events could cause the bruising. Accordingly, there was sufficient evidence to convict Smith of third degree domestic assault and a forensic pathologist's testimony would not have prevented such a determination.

Smith cannot prove that he would have rejected the plea offer and insisted on going to trial had his trial counsel investigated, interviewed, or deposed a forensic pathologist as the testimony would not have refuted the other evidence against him. By entering into the plea agreement, a Class IC felony, with a mandatory 5-year minimum sentence, along with habitual criminal enhancements, were dismissed. Smith is thus unable to show he was prejudiced by trial counsel's failure to retain such an expert.

### (b) Pamela

Smith alleges Pamela would have testified she had no concerns Smith was abusing Patricia prior to the relevant incident, she never saw the firearm in Smith's possession, the firearm was owned by Patricia, she was the person who contacted law enforcement after the incident, and that the "inconsistent stories of Patricia and [Pamela] were actuated by bias, hostility and a spirit of revenge." Brief for appellant at 27. He contends trial counsel was ineffective in failing to interview and depose her. We disagree.

It is undisputed that Smith's trial counsel did not interview Pamela. Trial counsel's deposition discloses he did not do so because he prioritized the possession of a firearm charge and habitual offender enhancements over the domestic assault charge.

Pamela is Patricia's adult daughter. She did not live in her mother's home, and she testified during her deposition taken for postconviction purposes that her mother did not discuss her relationship with Smith. Thus, even if Pamela were to testify that she had no concerns of physical abuse before the incident, this is not evidence that Smith did not assault Patricia on the date of this incident. To the contrary, Smith admitted to pushing and hitting Patricia during the altercation. Further, if Pamela were to testify she had never seen Smith possess the gun and that the gun belonged to Patricia, this would not disprove Smith's possession of the firearm. As we have explained, the evidence is sufficient to show Smith had possessed the firearm.

Smith contends that Pamela's testimony would show: inconsistency between her and Patricia's stories; neither Pamela's nor Patricia's stories aligned with phone records or photographs of Patricia's injuries; Pamela did not like Smith in Patricia's life; and they are biased and hostile witnesses. Although Smith asserts Pamela's and Patricia's stories were inconsistent and did not align with some evidence, he fails to explain how this is so. Regardless, based on the totality of the evidence, Smith would be unlikely to succeed at trial, and considering the substantial benefit of the plea agreement, it is unlikely he would have proceeded to trial. This claim fails.

### (c) Sheriff's Deputy

Smith asserts that a sheriff's deputy advised him that Patricia could possess a shotgun while living with Smith so long as the gun was kept out in the open. According to his postconviction motion, this conversation occurred shortly after 2012. Smith argues that trial counsel was ineffective for failing to interview and depose this deputy; however, Smith was unable to provide any identifying information that would have allowed counsel to do so.

Smith testified at the evidentiary hearing that, when trial counsel attempted to follow up about this sheriff's deputy, Smith was unable to provide trial counsel with the deputy's name or any identifying information other than that the deputy was a man. No testimony, deposition, or other evidence was produced at the evidentiary hearing to show this deputy existed, let alone that he would testify as Smith alleges, and Smith neglects to explain how his trial counsel was expected to locate this deputy without any identifying information. Trial counsel cannot be found ineffective for failing to contact a witness for which there is no identifying information, when Smith, himself, failed to present any evidence concerning this witness at the evidentiary hearing.

For these reasons, we find Smith was not entitled to postconviction relief on these claims of ineffective assistance of counsel.

### 3. Objection or Withdrawal of Pleas

Smith alleges that his trial counsel was ineffective for failing to object and move to withdraw Smith's guilty pleas after the State breached the plea agreement by not remaining silent during sentencing. As we have explained, there was no agreement that the State would remain silent during sentencing. Thus, the plea agreement was not breached. Trial counsel cannot be ineffective for failing to raise meritless arguments as a matter of law. See *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). This ineffective assistance of counsel claim fails.

### 4. COMMUNICATION

Smith asserts his trial counsel was ineffective by failing to adequately communicate with him. He alleges counsel met with him only two or three times outside of court for no longer than 30 minutes and that trial counsel would ignore his phone calls. He contends that, had counsel communicated effectively, Smith would have developed defenses, had witnesses interviewed and deposed, had experts hired, and would have understood the plea agreement.

Although Smith testified at the evidentiary hearing that his trial counsel "never showed [him] anything," trial counsel testified at his deposition that he provided Smith with a copy of police reports, photographs, and a transcript of Patricia's deposition. Trial counsel testified Smith was sent "two or three" letters and they "twice, maybe three times" met outside of court, and every time there was a court hearing. Trial counsel also testified there were "a lot of phone calls" between him and Smith. As we have stated, we give deference to the district court's determination that trial counsel was a more credible witness. Moreover, the record shows trial counsel provided Smith a letter describing the plea offers in specific detail. The record refutes that Smith's trial counsel failed to communicate with him. The district court therefore did not err in its determination that trial counsel's performance was not deficient.

### 5. RIGHT TO PETITION FOR FURTHER REVIEW

Lastly, Smith argues his trial counsel was ineffective by failing to advise him of his right to petition the Nebraska Supreme Court for further review after his convictions on direct appeal were affirmed. He contends that, although the district court determined trial counsel could not be ineffective for failing to file a PFR, trial counsel failing to *advise* him of his right to do so is fundamentally different. He alleges, "[I]t would shock the conscience to hold that inaccurately advising a criminal defendant that their appellate options have been exhausted would be effective assistance of counsel" and that resulting prejudice should be presumed. Brief for appellant at 35. We decline to make such a presumption here.

The sole assigned error presented in Smith's direct appeal was that the sentences imposed were excessive. Now on postconviction, Smith does not argue that, if he had been properly advised of his right to seek a PFR and done so, that further review would have been granted, much less that his sentences would have been reversed by the Supreme Court. Without any argument from Smith to this effect, we determine no prejudice resulted from trial counsel's failure to advise Smith of his right to seek a PFR. This ineffective assistance of counsel claim fails.

## VI. CONCLUSION

For the aforementioned reasons, we affirm the judgment of the district court denying Smith's amended verified motion for postconviction relief and dismissing the case.

AFFIRMED.